William CHAVIS, Plaintiff-Appellant,

v.

Charles J. ROWE, Director, Illinois Department of Corrections, et al., Defendants-Appellees.

No. 78–1889.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 19, 1980.

Decided March 11, 1981.

---

Dorothy B. Zimbrakos, Jerold S. Solovy and Thomas K. McQueen, Jenner & Block, Chicago, Ill., for plaintiff-appellant.

Edward M. Kay, Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, SWYGERT, Circuit Judge, CAMPBELL, Senior District Judge.[*]

FAIRCHILD, Chief Judge.

Plaintiff William Chavis, an inmate at the Menard Correctional Center, filed suit under 42 U.S.C. § 1983 seeking monetary damages, injunctive and declaratory relief against certain officials of the Illinois Department of Corrections who allegedly violated his Eighth and Fourteenth Amendment rights. The district court dismissed his complaint for failure to state a claim. Because we find that plaintiff stated both an Eighth Amendment claim and a Fourteenth Amendment due process claim, we reverse and remand for further proceedings.

### I.

The facts alleged in plaintiff's complaint are as follows. On September 28, 1976, correctional officer Robert H. Sipp was stabbed as he was escorting a group of residents, including Chavis, at the Stateville Correctional Center in Joliet, Illinois. In his Inmate Violation Report filed September 30, 1976, Officer Sipp stated that he did not know his attacker. The report then states:

Chavis was standing there looking with his hands in his pockets. When someone said "Kill the son of a bitch," inmate Chavis took his hands out of his pockets and moved toward me as if he was going to help the inmate. I broke and ran. There [were] other inmates moving with Chavis but [illegible]. I believe that inmate Chavis offered a further threat to [me] as I had already been [stabbed] twice by the inmate that attacked [me].

The Stateville Adjustment Committee held a hearing on the incident on October 2, 1976, after which Sipp's ticket was dismissed as improperly written.[1] Captain J. Boles, a correctional officer named as a defendant in this action and a member of the Adjustment Committee, then wrote a second Inmate Violation Report, dated October 9, 1976, charging Chavis with "assaulting an employee." The only other statement on this second report was: "Through investigation you have been identified as having stabbed Officer R. Sipp." Chavis was served on October 10, 1976 with Boles' report and with a notice stating he had the right to appear at the hearing, present a defense and to call witnesses.

The Adjustment Committee, composed of defendants J. M. Check, Chairman, E. M. Camy, a State Correctional Counselor, and Captain T. Wheaton, a correctional officer, heard Boles' charge against Chavis on October 12, 1976. Although Chavis did not present any witnesses, he did testify in his own behalf. He denied any involvement in the incident and informed the Committee of Sipp's report indicating that he had not stabbed Sipp. Without telling Chavis about the information or witnesses relied on by Boles, the Committee found Chavis guilty and ordered him transferred to segregation, demoted to "C grade" and deprived of two years of statutory good time. The Committee's written findings, in their entirety, were: "We recognize and consider the resident[']s statement[,] however[,] we accept the reporting officer[']s charges." Chavis was then sent to segregation, where, he alleges, he was confined with four other men in a seven by five foot cell.

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

1. Chavis alleged in his complaint that he was found not guilty. The Adjustment Committee Summary dated October 2, 1976 states "DIS-MISSED. Ticket is improperly written." The minutes of the meeting of the Administrative Review Board, Illinois Department of Corrections, dated February 4, 1977 state that Mr. Chavis was found "not guilty" by the Adjustment Committee.

Chavis appealed the findings of the second Adjustment Committee to the Stateville Inquiry Board, which reported on November 1, 1976, that it "found no error in the processing of the disciplinary violation report . . . and no basis for [Chavis'] grievance." He then appealed to the Administrative Review Board of the Illinois Department of Corrections (hereinafter the "Review Board"). They met to consider Chavis' appeal and to interview Chavis on February 4, 1977.

The Review Board members discussed the investigation of the stabbing incident with Assistant Warden Kapture, who provided them with a copy of the investigation report. This report, which was not provided to Chavis during the Adjustment Committee proceedings, contained the results of a polygraph examination administered to one of the residents providing information about the stabbing. The examination indicated that the resident was telling the truth when he identified another resident as having stabbed Officer Sipp. The Review Board concluded that the investigation report did not substantiate the allegations of Boles' disciplinary report written on October 9, 1976. The Review Board therefore recommended that the disciplinary report be expunged from all institutional records, that Chavis be released from segregation and restored to grade, and that his two years of statutory good time be restored. Defendant Rowe, who was then Acting Director of the Department, ordered that these actions be taken, and further ordered that Chavis be transferred to Menard Correctional Center no later than March 31, 1977.

On September 26, 1977, Chavis filed a § 1983 *pro se* complaint alleging: (1) a denial of his right to confront his accuser and present evidence in his own behalf at the October 12, 1976 disciplinary hearing; (2) a denial of his Fourteenth Amendment due process right by not being given the investigation report relied on by the Adjustment Committee; (3) a denial of his

Eighth and Fourteenth Amendment rights by defendants' reliance on an investigation report which did not support their finding of guilty or their imposition of sanctions; (4) a denial of his Fourteenth Amendment due process rights in being transferred to Menard without being given a hearing or being informed of the reasons for the transfer; (5) a denial of his Eighth Amendment right to be free from cruel and unusual punishment in being confined for six months in a five by seven cell with four other men, without adequate bedding, lighting, food, toilet facilities, and without access to showers, yard, legal materials, medical and dental care, while he was appealing the Adjustment Committee's finding of guilty. Chavis sought declaratory relief, a preliminary injunction ordering an immediate hearing on his transfer to Menard, $25,000 in compensatory damages and $20,000 in punitive damages, against the defendants, respectively.

Defendants Boles, Check and Wheaton filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief could be granted. The district court, by Order and Memorandum Opinion dated May 31, 1978, granted the motion to dismiss in favor of all named defendants. It found that Chavis was not denied due process at his October 12, 1976 hearing. It further found that the Review Board's action in vacating the Adjustment Committee's finding of guilt mooted Chavis' claim that the guilty verdict was not justified by substantial evidence. Furthermore, Chavis was not entitled to monetary relief for the time he spent in segregation, the court said, because he failed to allege bad faith by the correctional officers. Finally, the court held that he had no right, under either the Constitution or Illinois law, to a hearing prior to transfer from one state institution to another.

## II. The Due Process Claims

### A.

Three of Chavis' four due process claims stem from his October 12, 1976 disciplinary

hearing: a denial of his right to confront his accuser and present evidence in his own behalf; a denial of his right to be given the investigatory report relied on by the Adjustment Committee; and a denial of his right to be punished only upon a finding of substantial evidence, and to be given written reasons for the punishment. Chavis seeks declaratory relief to the effect that defendants' actions were an unconstitutional deprivation of his due process rights, and damages against the defendants Boles, Check, Camy and Wheaton, all of whom were members of the Adjustment Committee.[2] The district court, relying on *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) and *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), stated that Chavis received the full extent of procedural due process available to him in a prison hearing.[3]

We find that Chavis was accorded due process only to the extent that he was given proper written notice of the charges against him and offered the opportunity to present witnesses. Beyond this, however, the Adjustment Committee's procedures did not meet the minimum due process standards required by *Wolff*.

1.

▉ In his complaint, Chavis alleged that the Adjustment Committee's failure to disclose to him the investigatory report deprived him of due process in violation of the Fourteenth Amendment. This investigatory report contained statements by a witness to the incident which exculpated Chavis from stabbing Officer Sipp. Indeed, the statements so outweighed any other evidence pertaining to Chavis' involvement in the incident that after the Review Board

considered the report, it concluded that there was no evidence to substantiate the disciplinary charge against him.

If Chavis were being tried in a criminal prosecution, this allegation would present a claim based on *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), which hold that suppression by the prosecution of evidence clearly favorable to an accused violates due process where the evidence is material either to guilt or punishment, even if it was not specifically requested by the defendant. Evidence is material "if [it] creates a reasonable doubt that did not otherwise exist." *Id.* at 112, 96 S.Ct. at 2401. This means:

If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.

*Id.* at 112–13, 96 S.Ct. at 2401–2402.

The investigatory report at issue here meets the materiality standard as articulated by the Supreme Court in *Agurs*. Regardless of the standard of proof required for a finding of guilt in prison disciplinary proceedings, there was some doubt of Chavis' guilt, based on Officer Sipp's earlier report which stated that Chavis had his hands in his pockets during the incident. The other inmate's statement, which indicated that someone other than Chavis stabbed Sipp, should have made Chavis' guilt appear even more unlikely.

It can be argued that there is no *Brady* analogy because the fact-finder in this case,

---

2. Chavis, in his supplemental brief to this court, agrees with the district court's dismissal of these claims against defendant Rowe, the Director of the Illinois Department of Corrections, as there is no evidence of his personal involvement in the disciplinary hearing matter until his approval of its reversal by the Review Board. *See McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 728 (1978).

3. *Wolff v. McDonnell* sets forth the minimum due process requirements for prison disciplinary proceedings when the prisoner has been charged with serious misconduct which could result in loss of good time credits, punitive segregation, or which might also be punishable in state criminal proceedings. *Baxter v. Palmigiano, supra*, at 323, 96 S.Ct. at 1560.

the Committee, was given the report and could consider it in reaching its conclusion. After all, one of the aims of the *Brady* rule is to insure that the trier of fact considers *all* relevant evidence in reaching a conclusion as to guilt or innocence. But *Brady* is also based on the right of the defendant to prepare the best defense he can and bring to the court's attention any evidence helpful to his case. *McDonald v. State of Illinois,* 557 F.2d 596, 603 (7th Cir.), *cert. denied,* 434 U.S. 966, 98 S.Ct. 508, 54 L.Ed.2d 453 (1977). Here, Chavis was deprived of his ability to make his own use of this exculpatory evidence before it was given to the fact-finders. And although the Committee ostensibly had the other inmate's statement before it, it is questionable whether its members even considered it because they failed to mention it in their written findings. If Chavis had been given the material, and argued it to the Committee, it may have been forced to consider the material more seriously. Given the dearth of evidence on which the Committee made its finding of guilt, a forceful argument by Chavis based on the other inmate's statement could have resulted in a finding of not guilty. We therefore cannot say that defendants' failure to disclose the statement was immaterial or harmless error.[4]

■ The reasons in favor of applying a *Brady*-type rule to prison disciplinary proceedings are obvious. *Wolff v. McDonnell,* however, requires consideration of whether imposing such a rule will adversely affect the state's interests in maintaining institutional peace and security. 418 U.S. at 566, 561–63, 94 S.Ct. at 2977–2978. For example, although the right to present evidence is basic, the Supreme Court noted that "the unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases

may be essential to carrying out the correctional program of the institution." *Id.* at 566, 94 S.Ct. at 2979. Prison officials are therefore given broad discretion in balancing these interests, with only limited review by the courts. *Hayes v. Walker,* 555 F.2d 625, 629 (7th Cir.), *cert. denied,* 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977) (*Hayes I*). There must be enough support in the record for the officials' decision, however, so that a court can review for abuse of discretion. *Id.* at 630. Similarly, the Supreme Court left to the discretion of prison officials the decision whether to allow cross examination of adverse witnesses. *Wolff, supra* at 568.

Turning now to the *Brady* situation, we see great importance in permitting the inmate to know of exculpatory evidence, and little reason to think that such disclosure would lead to prison disruption or danger. Conceivably there may be situations in which prison officials reasonably fear that disclosure of the entire report, certain names of other prisoners, or the like, may cause disruption or danger. At the complaint stage, however, there is no reason to presume that type of situation, nor any reason why at least the substance of the other inmate's statement could not safely have been disclosed to Chavis.

In judging Chavis' complaint, it appears that simple fair play required disclosure to him of the exculpatory material or its substance, and that failure to disclose resulted in a miscarriage of justice at the committee stage. We conclude that the complaint stated a due process claim in this respect.

### 2.

■ The Adjustment Committee violated another of Chavis' due process rights by failing to provide Chavis with a written statement as to the evidence relied on and reasons for the disciplinary action. *Wolff v. McDonnell, supra* 418 U.S. at 564–65, 94

---

4. Cf. *United States v. Alberico,* 604 F.2d 1315, 1319 (10th Cir.), *cert. denied,* 444 U.S. 992, 100 S.Ct. 524, 62 L.Ed.2d 422 (1979) (Defendant's *Brady* right was not affected because the previously undisclosed identity of an undercover FBI agent was disclosed to defendant during trial, thereby enabling defendant to argue entrapment to the jury.).

S.Ct. at 2978–79; *Hayes I, supra* at 633. The Adjustment Committee's report at the conclusion of the hearing simply said: "We recognize and consider the resident['']s statement[,] however[,] we accept the reporting officer['']s charges." It did not mention what evidence the reporting officer relied on, the investigatory report containing exculpatory evidence, or Officer Sipp's earlier report. It gave no clear indication of why the reporting officer was to be believed rather than Chavis or Officer Sipp. The statement thus falls far short of *Wolff's* requirement that a written record of the proceedings be provided in order to protect the inmate against collateral consequences and to insure that prison officials acted fairly. The Supreme Court in *Wolff* stated:

> [T]he provision of a written record helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly. Without written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others.

*Id.* at 565, 94 S.Ct. at 2979.

This court, in discussing the *Wolff* requirement for a written statement, added that such a statement also protected the inmate's substantive due process right not to be found guilty except by an appropriate quantum of evidence. *Aikens v. Lash,* 514 F.2d 55, 60 (7th Cir. 1975), *vacated and remanded on other grounds,* 425 U.S. 947,

96 S.Ct. 1721, 48 L.Ed.2d 191 (1976), *reinstated as modified,* 547 F.2d 372 (1976). *See Thompson v. City of Louisville,* 362 U.S. 199, 206, 80 S.Ct. 624, 629, 4 L.Ed.2d 654 (1960); *Wilwording v. Swenson,* 502 F.2d 844, 851 (8th Cir. 1974), *cert. denied,* 420 U.S. 912, 95 S.Ct. 835, 42 L.Ed.2d 843 (1975); *Gomes v. Travisono,* 510 F.2d 537, 540 (1st Cir. 1974). Without a detailed statement of the Committee's findings and conclusions, a reviewing court (or agency) cannot determine whether the finding of guilt was based on substantial evidence or whether it was sufficiently arbitrary so as to be a denial of the inmate's due process rights. *Aikens v. Lash, supra* at 60–61.[5]

That the Adjustment Committee's statement was inadequate can be seen from the Review Board's conclusion, after making detailed, written findings of fact, that the Adjustment Committee's holding that Chavis was guilty of stabbing Officer Sipp was not substantiated by the facts. By this time, Chavis had spent five months in segregation. Had the Adjustment Committee made detailed findings to begin with, Chavis may never have been sent to segregation, or, the Inquiry Board may have been compelled to reverse the Committee's decision upon its first review. We therefore hold that in failing to provide Chavis with a written statement giving facts relied on and reasons for the conclusions reached, defendants violated Chavis' due process rights under *Wolff,* and also his right not to be found guilty except by an appropriate quantum of evidence.

**3.**

■ The district court held that Chavis' due process claim was mooted by the Re-

---

**5.** The statement also violates regulations of the *Illinois Department of Corrections,* adopted shortly after the Supreme Court's decision in *Wolff,* which provide:

> The resident must be given a written statement, signed by the Chairman, of the evidence relied upon by the majority of the committee and the specific disciplinary action taken, as well as the reasons for the disciplinary action. If personal or institutional safety is involved, this statement may properly exclude certain items of evidence, but the statement should then indicate the

fact of the omission. The statement of decision should include, wherever appropriate, a short explanation of why information purporting to exonerate the resident was discounted, if it was discounted. It will not be sufficient for the committee's decision to simply adopt and copy the exact wording of the Resident Information Report. . . .

State of Illinois Department of Corrections, Administrative Regulation No. 804, Section II–B(9), cited in *Burbank v. Twomey,* 520 F.2d 744, 747 n.6 (7th Cir. 1975).

view Board's vacation of that finding and its expungement from his record. It further stated that even if his claim for damages for the time he spent in segregation was not moot, he could not be awarded damages in this § 1983 action unless his complaint included the allegation that defendants acted in bad faith. It is true that the Review Board cleared Chavis' record of any disabilities which would impair his opportunities for parole and other benefits. Nonetheless, we hold Chavis stated a live claim for damages against defendants, based on the time he spent in segregation, even though his complaint did not specifically allege defendants' bad faith.

■ While defendants, as state prison officials, enjoy a qualified immunity from damages in § 1983 actions, *Procunier v. Navarette*, 434 U.S. 555, 561, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1978), this court has not required plaintiffs affirmatively to allege bad faith by the state defendants in order to state a claim under § 1983. *Tritsis v. Backer*, 501 F.2d 1021, 1022–23 (7th Cir. 1974). Rather, this court has treated the question of good faith as an affirmative defense which must be pleaded by the defendant in a § 1983 action. *Id.* Furthermore, the Supreme Court recently held that, to state a claim under § 1983, plaintiff need only allege that some person, acting under color of state or territorial law, deprived him of a federal right. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923 (1980). Chavis' complaint met these two requirements and states a valid § 1983 claim. Defendants must therefore prove that they acted in good faith before they are granted qualified immunity.

■ Under the rule of *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975), as applied to prison officials in *Procunier v. Navarette, supra,* defendants are deprived of a good faith defense if: (1) the constitutional right they allegedly violated was clearly established at

the time of their challenged conduct; (2) they knew or should have known of that right; and (3) they knew or should have known that their conduct violated the constitutional norm. *Procunier v. Navarette, supra* at 562, 98 S.Ct. at 859. After studying the record before us, we conclude that defendants cannot be granted immunity for their failure to provide Chavis with an adequate written statement at the conclusion of the disciplinary hearing because they will be unable to meet the three-prong objective test for raising a good faith defense.

First of all, the due process right defendants violated by failing to provide Chavis with a written statement setting forth the facts relied on and the reasons for the conclusions reached was clearly established at the time of Chavis' hearing. The Supreme Court mandated such a statement in *Wolff v. McDonnell,* decided in 1974, and this court had consistently enforced this requirement. *See Hayes I, supra,* 555 F.2d at 631; *Aikens v. Lash, supra* at 60. The first part of the *Wood v. Strickland* objective test for depriving prison officials of a good faith defense is thus satisfied.

The second prong of the test is met because defendants knew, or should have known of this right by the time of Chavis' hearing in 1976. Indeed, Department of Corrections Regulations promulgated shortly after the *Wolff* decision provide that a prisoner be given a written statement of the evidence relied on and the reasons for the disciplinary action.[6] It is no defense for defendants to claim, two years after *Wolff* was decided, that they were unaware of this right, for we have previously charged prison officials with "be[ing] sensitive and alert to the protections afforded prisoners by the developing judicial scrutiny of prison conditions and practices." *Little v. Walker,* 552 F.2d 193, 197 (7th Cir. 1977), *cert. denied,* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 530 (1978), citing *Knell v. Bensinger,* 522 F.2d 720, 725 (7th Cir. 1975). In other words, "a prison official may not take sol-

---

**6.** See note 5, *supra.*

ace in ostrichism." *Little v. Walker, supra* at 197. They are charged with knowledge of their own prison regulations, and in this instance, those regulations provide that a post hearing statement is insufficient if it simply adopts the investigator's report.

Finally, given the regulations, and this court's previous statements regarding the importance of a written statement setting out all the facts relied on and the reasons for the conclusions reached, defendants must have known that their meager statement did not satisfy the constitutional norm. The third prong of the *Wood v. Strickland* test is therefore fulfilled and defendants cannot claim immunity from damages for this due process violation. *See Mary and Crystal v. Ramsden*, 635 F.2d 590, at 599 (7th Cir. 1980). To hold otherwise would be to encourage official ignorance of the law. *See Hayes v. Thompson*, 637 F.2d 483, at 495 (7th Cir. 1980) (*Hayes II*) (Swygert, J., concurring and dissenting).[7] Defendants' failure to provide an adequate written statement is all the more grievous in this case where they had evidence tending to show Chavis was not guilty. Had they provided a proper written statement they would have been forced to consider this exculpatory evidence which could then quite reasonably have resulted in their absolving Chavis of guilt. Instead, defendants ignored their constitutional duty, and Chavis spent six months in segregation for an offense it appears he did not commit.

On the other hand, we are unable to apply the three prong objective test to defendants' failure to inform Chavis of the substance of the investigatory report containing exculpatory evidence because we cannot fairly say that the constitutional right to exculpatory evidence in a prison disciplinary proceeding was clearly established at the time of Chavis' hearing. We come to this conclusion reluctantly because it seems to us that common sense alone should have told defendants that their failure to provide Chavis with the substance of this report was fundamentally unfair. Nevertheless, on remand to the district court, defendants must be given the opportunity to prove that they acted in "good-faith fulfillment of their responsibilities and within the bounds of reason under all the circumstances." *Wood v. Strickland, supra*, 420 U.S. at 321, 95 S.Ct. at 1000. Defendants' job in this situation was to provide Chavis with the fairest hearing possible within the context of maintaining institutional security. On the present record we can find no reason why institutional interests would have been harmed by providing Chavis with at least the substance of the investigatory report.

### B.

■ Chavis' fourth due process claim stems from defendant Rowe's order to transfer Chavis from Stateville to Menard. Defendant Rowe simply appended to his concurrence in the Review Board's February 4, 1977 decision an order transferring Chavis to Menard Correctional Center no later than March 31, 1977. This order gave no reason for the transfer, nor did it state that Chavis would be given a hearing regarding the action. Chavis alleged that this transfer, which appeared to him to be for punitive reasons, violated minimal due process requirements because he was not given a transfer hearing and informed of the reasons for the transfer. He further alleged that the transfer interfered with his rehabilitation and jeopardized his parole opportunities. He sought injunctive relief ordering an immediate hearing on his transfer. The district court, relying on *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49

---

7. In *Hayes II, supra*, this court upheld the district court's finding that the Institutional Adjustment Committee could, in good faith, believe that their statement as to the facts relied on and reasons for conclusions reached in Hayes' prison disciplinary proceeding met the *Wolff v. McDonnell* requirement. That situation is distinguishable from the present one because Hayes, unlike Chavis, was provided with a full transcript of the proceedings, including the summary of the investigator's report. *Hayes II, supra* at 491–492.

L.Ed.2d 451 (1976), said that Chavis had no right to a hearing prior to transfer from one institution to another within the state system unless state law or practice conditioned transfer on misbehavior or other specified events. Because it found no Illinois statutes attaching conditions to the state's authority to transfer inmates, the district court held that it was precluded from considering the circumstances surrounding Chavis' transfer. Court-appointed counsel for Chavis, in their supplemental brief filed in this court, conceded this claim, (Supp. brief p. 28 n.38) but we have examined two aspects: (i) whether the Illinois regulations regarding transfer of inmates establish a right to remain in a particular institution; and (ii) whether Chavis' allegation that he was transferred for punitive purposes states a claim.

*Meachum v. Fano* held that inmates have no liberty interest in remaining in any particular institution unless state law, practice or procedure conditions transfer on the occurrence of specified events, such as misconduct. *Id.* at 228, 96 S.Ct. at 2540. Illinois Department of Corrections regulations provide for a hearing by the Institutional Assignment Committee whenever a resident requests an institutional transfer or institutional staff recommends the transfer of a resident.[8] These regulations, which require consideration of various factors prior to transferring a prisoner, establish procedures for the exercise of discretion, but they do not limit the decision to transfer to any particular reason. Without such a limitation, the regulations do not recognize any

right on the part of the prisoner to serve in a particular institution. *Id.*

In his complaint, Chavis alleged that his transfer may have been for punitive reasons because he was placed in segregation upon his arrival at Menard, although he was released shortly thereafter. This temporary assignment to segregation on arrival may well have been incidental to transfer rather than punitive. If Chavis wishes to pursue the claim that it was punitive, leave is given to amend his complaint on remand, for if he can establish that his transfer was disciplinary, he has stated a valid claim. *Durso v. Rowe*, 579 F.2d 1365, 1369 n.1 (7th Cir. 1978), *cert. denied*, 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979).

### III. *The Eighth Amendment Claims*

■ Chavis alleged that the conditions to which he was exposed during his nearly six months in segregation amounted to cruel and unusual punishment in violation of the Eighth Amendment. He alleged that while in segregation, he was confined to a cell measuring 5 feet by 7 feet, along with four other residents, and received inadequate bedding, light, toilet facilities, showers, access to legal materials, medical and dental care and food. He requested declaratory relief to the effect that such practices were unconstitutional, and damages. The district court appears to have overlooked this allegation in its Order and Memorandum Opinion dismissing Chavis' complaint.[9]

Confinement in a prison or in an isolation cell is a form of punishment subject to scrutiny under Eighth Amendment standards, which are made applicable to the

---

8. State of Illinois Department of Corrections, Administrative Regulation No. AR 819, Section II–B, reprinted in *Stringer v. Rowe*, 616 F.2d 993, App. 1005 (7th Cir. 1980). The Assignment Committee is to review a report prepared by the Clinical Services Supervisor regarding the proposed transfer and the inmate's activities at the facility, and to check with the Medical Unit Administrator to ensure that the inmate's medical needs are being taken care of. Any transfer recommendation made by the Assignment Committee must be approved by the Chief Administrative Officer, and the Transfer Coordinator then makes the final decision regarding the inmate's placement.

9. Chavis' failure to name a particular defendant in connection with his Eighth Amendment allegation is no bar to this claim. *Maclin v. Paulson*, 627 F.2d 83, 87–88 (7th Cir. 1980) (Instead of dismissing a *pro se* complaint for failure to identify certain unnamed defendants, the district court should have ordered their disclosure or permitted plaintiff to obtain their identity through discovery.). Direct individual responsibility for the conditions of segregation imposed on plaintiff must have rested on an official at a relatively high administrative level. If defendant Rowe disclaims knowledge and responsibility, he can readily demonstrate who would bear responsibility for whatever conditions existed.

states by the Fourteenth Amendment. *Hutto v. Finney*, 437 U.S. 678, 685, 98 S.Ct. 2565, 2570, 57 L.Ed.2d 522 (1978). Thus, Chavis' six month confinement in segregation is in violation of the Eighth Amendment if the conditions of that confinement transgressed today's "broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Id.* at 685, 98 S.Ct. at 2570 (citations omitted). This court recently described the test for a § 1983 action charging prison officials with violating the Eighth Amendment as requiring plaintiff to show that prison officials intentionally inflicted excessive or grossly severe punishment on him or that the officials knowingly maintained conditions so harsh as to shock the general conscience. *Stringer v. Rowe*, 616 F.2d 993, 998 (7th Cir. 1980).

Chavis' allegation that he was confined for six months with four other men in a cell measuring 5 feet by 7 feet states an Eighth Amendment transgression as such confinement, if true, shocks the general conscience. Courts have found conditions of overcrowding to be *per se* unconstitutional because the purpose of the prohibition against cruel and unusual punishment is to protect and safeguard a prison inmate from an environment where degeneration is probable and self-improvement unlikely due to conditions which inflict needless mental or physical suffering. *Battle v. Anderson*, 564 F.2d 388, 393 (10th Cir. 1977). Thus, the Tenth Circuit has held that housing two men in "a little 35–40 square foot 'cubby hole' . . . . offends the contemporary standards of human decency, *id.* at 395, and has ordered the Oklahoma Department of Corrections to provide each inmate with a minimum of 60 square feet. *Id.* at 397. And in *Hutto v. Finney*, the Supreme Court affirmed the district court's finding that the conditions of "punitive isolation" in the Arkansas prisons were cruel and unusual. There, an

average of 4, and sometimes as many as 10 or 11, prisoners were crowded into windowless 8 by 10 foot cells containing no furniture other than a source of water and a toilet that could be flushed only from outside the cell. *Hutto v. Finney, supra* at 682, 98 S.Ct. at 2569. Chavis' allegations of overcrowding are sufficiently similar to those found in *Battle v. Anderson* and *Hutto v. Finney*, to state an Eighth Amendment claim.

Defendants argue that the overcrowding alleged by Chavis to have occurred during his time in segregation is not cruel and unusual because it was "temporary." Defendants forget that Chavis was sentenced to an indefinite period in segregation and actually spent almost six months there before the Review Board ordered him released. Thus, the conditions alleged by Chavis are far more serious than those suffered by the plaintiff in *Haines v. Kerner*, 492 F.2d 937 (7th Cir. 1974), relied on by defendants.[10] Not only did Chavis allege he was confined in a smaller cell for a much longer period of time with more men than was plaintiff in *Haines v. Kerner*, but the conditions in the latter case were judged by 1968 standards, *id.* at 942, and Chavis' allegations are to be measured against prison crowding found to be cruel and unusual in 1976. *See Hutto v. Finney, supra* at 685, 98 S.Ct. at 2570. And by 1976, some courts had held that the Constitution required that each inmate be provided with a minimum of sixty square feet.[11]

Chavis states a further Eighth Amendment claim in his allegation that while he was in segregation, he received inadequate bedding, light, toilet facilities, showers, access to legal materials, medical and dental care and food. Defendants, relying on *Adams v. Pate*, 445 F.2d 105 (7th Cir. 1971), argue that these allegations are

---

10. In *Haines v. Kerner, supra,* this court held that confinement in an eight by sixteen foot "isolation cell" for 15 days, with one other inmate for ten days, and three or four inmates for the last five days was not unconstitutional.

11. *See Battle v. Anderson, supra* at 395, 401. While the Supreme Court has recently criticized that the practice of establishing a consti-

tutional right to a minimum number of square feet per prisoner, *see Bell v. Wolfish*, 441 U.S. 520, 543 n.27, 99 S.Ct. 1861, 1876 n.27, 60 L.Ed.2d 447 (1979), the Court has recognized that at some point, overcrowding does state an Eighth Amendment, *Hutto v. Finney, supra* at 682, 98 S.Ct. at 2569 or a due process claim. *Bell v. Wolfish, supra* at 542, 99 S.Ct. at 1875.

too conclusory to state a claim under § 1983 for deprivation of rights under the Eighth Amendment. In *Adams v. Pate*, this court referred to the portion of a complaint alleging "unsanitary living conditions" as being too conclusory because "it is not accompanied by specific allegations, which, if proved, would establish . . . cruel or unusual punishment within the purview . . . of the Eighth Amendment." *Id.* at 107. Here, Chavis has alleged conditions which, if proved, would state an Eighth Amendment violation. This court has directed awards of damages for similar lists of conditions, *Chapman v. Pickett*, 586 F.2d 22, 28 (7th Cir. 1978); *Buise v. Hudkins*, 584 F.2d 223, 233 (7th Cir. 1978), *cert. denied*, 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979),[12] and those cases preclude a summary dismissal in the instant case.

The judgment of the district court is therefore reversed and the cause is remanded for proceedings consistent with this opinion. Circuit Rule 18 shall apply on remand.

12. In *Chapman, supra*, plaintiff alleged that while in segregation, he suffered lack of exercise, lack of society with other inmates or family and friends, and lack of work or vocational training. *Id.* at 28. Plaintiff in *Buise* merely alleged that his room at the State Farm "would be almost like having an apartment in free society compared to what he had at the prison," *id.* at 233, which this court said was sufficient for stating damages for being transferred to the prison.