No. 80–2082. BOLES ET AL. *v.* CHAVIS. C. A. 7th Cir. Motion of respondent for leave to proceed *in forma pauperis* granted. Certiorari denied.

JUSTICE REHNQUIST, dissenting.

This case originated in the United States District Court for the Northern District of Illinois, and that court issued a brief memorandum opinion and order denying relief to respondent

Chavis.   Respondent had brought an action under 42 U. S. C. § 1983 claiming that he had been denied constitutional rights as a result of prison procedures set in motion by the stabbing of a correctional officer at one of the Illinois state prisons, even though he was ultimately exonerated by those procedures.   The District Court divided respondent's complaint into two parts: a claim of denial of due process under the Fourteenth Amendment to the United States Constitution by reason of the conduct of the hearing before the prison Adjustment Committee in 1976, and a claim that he was denied his "civil rights" when he was transferred to another prison in the system without a hearing.   The District Court discussed the 1976 hearing in some detail, and found no violation of due process.   In addition, the District Court found that respondent's transfer without a hearing raised no constitutional issue because of our decision in *Meachum* v. *Fano*, 427 U. S. 215 (1976).   The court accordingly dismissed respondent's complaint.

On appeal, the Court of Appeals reversed the judgment of the District Court as to the due process claim and also sustained an Eighth Amendment claim upon which the District Court appears not to have passed.   *Chavez* v. *Rowe*, 643 F. 2d 1281 (CA7 1981).   The Court of Appeals stated that "Chavis' failure to name a particular defendant in connection with his Eighth Amendment allegation is no bar to this claim."   *Id.*, at 1290, n. 9.

I believe that this Court should grant petitioners' request for review of the manner in which the Court of Appeals treated the respondent's due process claim.   At a hearing on October 2, 1976, the Adjustment Committee dismissed the correctional officer's "ticket" as "improperly written."   *Id.*, at 1283.   The following week, another correctional officer who was also a member of the Adjustment Committee wrote a second "Inmate Violation Report" charging respondent with the assault and stabbing.   After a series of proceedings and appeals within the Illinois prison system, the Acting Director

of the Illinois Department of Corrections, following the recommendation of a Review Board, ordered that the disciplinary report against respondent be expunged from all institutional records, that respondent be released from the segregation in which he had been confined since October, and that his two years of statutory good time be restored. *Id.*, at 1284.

The Court of Appeals thought that the system of prison disciplinary hearings and review established by the State of Illinois did not meet the standards of *Wolff* v. *McDonnell*, 418 U. S. 539 (1974). It was of the view that the Adjustment Committee's failure to disclose to respondent an investigatory report containing statements by a witness to the stabbing incident violated this Court's decisions in *Brady* v. *Maryland*, 373 U. S. 83 (1963), and *United States* v. *Agurs*, 427 U. S. 97 (1976).

This would have very likely been true had these procedures been constructed on the traditional judicial model, but I had thought one of the touchstones of prison disciplinary proceedings was that they need not be so constructed. As we said in *Wolff, supra,* at 556:

> "Of course, as we have indicated, the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed. . . . Prison disciplinary proceedings are not a part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply. Cf. *Morrissey* v. *Brewer*, 408 U. S., at 488. In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application."

Likewise in *Baxter* v. *Palmigiano*, 425 U. S. 308 (1976), we said of *Wolff:*

> "Within the reasonable limitations necessary in the prison disciplinary context, we suggested, but did not require, that the disciplinary committee 'state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases.' . . .
>
> "We were careful to distinguish between this limited right to call witnesses and other due process rights at disciplinary hearings. We noted expressly that, in comparison to the right to call witnesses, '[c]onfrontation and cross-examination present greater hazards to institutional interests.' . . . We said:
>
>> 'If confrontation and cross-examination of those furnishing evidence against the inmate were to be allowed as a matter of course, as in criminal trials, there would be considerable potential for havoc inside the prison walls. Proceedings would inevitably be longer and tend to unmanageability.' . . .
>
> "We therefore concluded that '[t]he better course at this time, in a period where prison practices are diverse and somewhat experimental, is to leave these matters to the sound discretion of the officials of state prisons.'" 425 U. S., at 321–322, citing *Wolff* v. *McDonnell, supra,* at 566, 567, 569.

It seems to me that the opinion of the Court of Appeals, dealing as it does with the stabbing of a correctional officer as he was escorting a group of inmates including respondent, comes close to disavowing the principles of flexibility and experimentation expounded in *Wolff, supra,* and *Baxter, supra,* and virtually mandates a full panoply of courtroom procedures for what we have heretofore described as "diverse" and "flexible" prison dispute settlement mechanisms.