Llewellyn CULBERT,
Plaintiff–Appellant,

v.

Warren YOUNG, Defendant–Appellee.

No. 86–2712.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 16, 1987.

Decided Nov. 12, 1987.

Michael E. Rigney, Jenner & Block, Chicago, Ill., for plaintiff-appellant.

Frank D. Remington, Asst. Atty. Gen., Madison, Wis., for defendant-appellee.

Before COFFEY, RIPPLE and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

The plaintiff is an inmate at the Wisconsin Correctional Institution (WCI) in Waupun, Wisconsin. He brought this suit against the Superintendent of WCI claiming that the defendant violated his due process rights by improperly processing certain disciplinary conduct reports as major rather than minor offenses and by failing to provide adequate statements of the

evidentiary bases for finding him guilty of those violations. The district court held that the plaintiff did not have a protectible liberty interest in having conduct reports classified as minor rather than major and that the written statement of reasons provided by the defendant for the disposition of each of the reports satisfied due process requirements. Because we agree with both of these holdings, we affirm the judgment of the district court.

## I

### Facts

#### A. *Wisconsin Regulatory Scheme*

Wisconsin Administrative Code section HSS 303 governs the discipline of inmates housed by the state's division of corrections. Wis.Admin.Code § HSS 303 (Aug. 1980).[1] These regulations define a variety of inmate disciplinary violations and establish a scheme of sanctions for those offenses. When a staff member observes or finds out about a rule violation, the regulations direct him to write up a conduct report setting forth the details of the incident. The prison security director then reviews the conduct report and classifies the offense as either major or minor. The regulations identify twelve particular viola-

tions that always constitute major offenses.[2] The security director must determine whether to treat all other offenses as major or minor offenses. The regulations establish five specific criteria that "should be" considered in making this determination.[3] If a prisoner is alleged to have committed a major violation, he is entitled to a hearing before a hearing officer or the adjustment committee. The hearing officer or committee then determines the disposition of the conduct report and imposes a penalty if the prisoner is found guilty.

#### B. *The Disciplinary Action Against the Plaintiff*

Between November 1982 and February 1984, the plaintiff received five conduct reports alleging violations of various provisions of § HSS 303. In each instance, the security director classified the violation as a major offense indicating on the record only that the conduct report was "justified." None of the alleged offenses was defined as a major offense under § HSS 303.68(2) with the exception of Conduct Report No. 90283, in which the plaintiff was originally charged with arson. The plaintiff was found guilty of all but one of the charges against him. The five conduct re-

---

**1.** Section HSS 303 was amended in 1985. *See* note 4 *infra.*

**2.** Section HSS 303.68(2) provides that:
Any violation of the following sections is a *major* offense:

| Section | Title |
|---|---|
| HSS 303.12 | Battery |
| HSS 303.13 | Sexual assault—intercourse |
| HSS 303.14 | Sexual assault—contact |
| HSS 303.18 | Inciting a riot |
| HSS 303.19 | Participating in a riot |
| HSS 303.22 | Escape |
| HSS 303.23 | Disguising identity |
| HSS 303.37 | Arson |
| HSS 303.41 | Counterfeiting and forgery |
| HSS 303.45 | Possession, manufacture and alteration of weapons |
| HSS 303.57 | Misuse of prescription medication |
| HSS 303.59 | Use of intoxicants |

*Id.* (emphasis in original).

**3.** Section HSS 303.68(3) provides that:

An alleged violation of any section other than those identified as major in sub. (2) of this section may be treated as either a major or minor offense. The security director shall decide whether it should be prosecuted as a major or minor offense, if the offense has not been disposed of summarily in accordance with HSS 303.74. To determine whether an alleged violation should be treated as a major or minor offense, the following criteria should be considered:
(a) Whether the inmate has previously been found guilty of the same or a similar offense, how often, and how recently;
(b) Whether the inmate has recently been warned about the same or similar conduct;
(c) Whether the alleged violation created a risk of serious disruption at the institution or in the community;
(d) Whether the alleged violation created a risk of serious injury to another person; and
(e) The value of the property involved, if the alleged violation was actual or attempted damage to property, misuse of property, possession of money, gambling, unauthorized transfer of property, soliciting staff or theft.
*Id.*

ports and their dispositions were as follows:

*Conduct Report No. 98318.* On November 9, 1982, the plaintiff was issued Conduct Report No. 98318 for conspiracy to commit battery and threats in violation of §§ HSS 303.21 and 303.16. R.13, Ex. A. The complaining officer gave a lengthy statement in the conduct report in which he said that members of the staff heard rumors that an inmate intended to harm several officers. Upon investigation, one officer was approached by the plaintiff. He asked her if she was aware of the rumors and if she knew that she was one of the officers who was going to be hurt. *Id.* At the hearing, the complaining officer submitted a memorandum containing the confidential statements of an informant who claimed that "he was informed by inmate Culbert that Sgt. Duerst was going to be 'Shanked' by Culbert, and that Sgt. Sawyer and Holder were also to be harmed. Further, Informant states that Culbert showed him the 'Shank' that he was going to use on Sgt. Duerst." *Id.* The memorandum went on to say that the officer believed the informant "because his information is supported by other information and facts." *Id.* The plaintiff appeared at the hearing and made a general denial of the allegations in the conduct report stating that he was locked up during the incidents described. *Id.* He also said that he only asked the officer about the threats when he heard the rumors from another inmate. R.13, Ex. B. The adjustment committee found the plaintiff not guilty of conspiracy to commit battery, but guilty of threats. The evidentiary basis stated for the finding of guilt was "reliance on statements in Conduct Report and mainly in confidential statement that this inmate made a threat to injure staff." *Id.*

*Conduct Report No. 89424.* On December 6, 1982, the plaintiff was issued Conduct Report No. 89424 for disobeying orders in violation of §§ HSS 303.24. R.13, Ex. C. The complaining officer stated that "[i]nmate Culbert was given several direct orders to come to the bars to be cuffed so we could put another man in the cell. Inmate Culbert refused all orders." *Id.* At

his hearing, the plaintiff stated that the officer was incorrect. "I was at bars when they came with Stawicki to triple with him. I told them I refused to triple with him. They didn't even ask." R.13, Ex. D. The adjustment committee found the plaintiff guilty of disobeying orders. The written statement of the evidence relied on stated that the hearing officer relied "on C.R. statement by Staff member that inmate refused several orders to come to front of cell to be cuffed...." *Id.*

*Conduct Report No. 90283.* On January 7, 1983, the plaintiff received Conduct Report No. 90283 charging him with arson in violation of § HSS 303.37. R.13, Ex. E. The charge was later changed to creating a hazard in violation of § HSS 303.39. *Id.* The complaining officer stated that he observed the plaintiff put his arm through the bars of his cell and throw a "rolled up wad of paper" at a fire that the officer was attempting to put out. *Id.* At the disciplinary hearing, the plaintiff defended by stating that there were two people in the cell, that the officer only saw an arm come out of the cell, and that the officer relied on the name of the inmate on the cell door to identify the perpetrator. The plaintiff contended that only his name and not his roommate's name appeared on the cell door. R.13, Ex. F. The adjustment committee found the plaintiff guilty of creating a hazard. The record indicates as the reason for the finding of guilt that the hearing officer relied "on Conduct Report, statement and testimony received via telephone call to officer that inmate was positively identified" as the offending party. *Id.*

*Conduct Report No. 141066.* On July 16, 1983, the plaintiff was issued Conduct Report No. 141066 for disobeying orders, disrespect, and disruptive conduct, in violation of §§ HSS 303.24, 303.25, and 303.28. R.13, Ex. G. The complaining officer wrote in the conduct report that the plaintiff approached him at his desk and began yelling very loudly. When ordered to stop yelling, the plaintiff responded with profanities and continued yelling before finally returning to his cell. At the disciplinary hearing, the plaintiff defended by stating

that the officer "left out half of the story. I was at Rec and when I returned[,] my cell was all messed up." R.13, Ex. H. The plaintiff admitted saying profanities to the officer. *Id.* The adjustment committee found the plaintiff guilty of these violations. The reason stated for the finding of guilt was reliance "on statements in C.R. by officer that inmate disobeyed order to stop yelling, was disrespectful ... and his actions [sic] caused others to stop and observe." *Id.*

*Conduct Report No. 141590.* On February 17, 1984, the plaintiff was issued Conduct Report No. 141590 charging him with disrespect and disruptive conduct, in violation of §§ HSS 303.25 and 303.28. R.13, Ex. I. The complaining officer stated that, when he stopped the plaintiff to search him, the plaintiff became very disturbed. He swore at the officer and then, without any direction from the officer, stripped off all of his clothes. The other complaining officer added that another inmate "complained that 'strip searches like that are illegal.' He began to spread the word, but when I assured him the officer had not requested Culbert to strip, [he] apologized. We narrowly avoided a serious disruption during mass movement." *Id.* At the disciplinary hearing, the plaintiff did not deny that the incident took place but complained that the officer had a habit of waiting until the plaintiff had passed by before calling him back to be searched. R.13, Ex. J. The adjustment committee found the plaintiff guilty of these violations. The reason stated for the finding of guilt was reliance "on statements in C.R. by Staff in guilt finding that inmate was disrespectful" and that "he caused disruption by his actions." *Id.*

### C. *Proceedings in the District Court*

On June 30, 1986, the plaintiff filed his complaint in the district court under 42 U.S.C. § 1983. He sought declaratory relief to the effect that the defendant's actions were an unconstitutional deprivation of his due process rights, an injunction prohibiting prison officials from treating violations as major offenses unless they record the reasons for doing so, an injunction requiring his conduct reports be expunged, and compensatory and punitive damages for violation of his due process rights. R.2. The parties then filed cross-motions for summary judgment with supporting briefs and affidavits. R.7, 12. On October 9, 1986, the district court issued a memorandum and order granting the defendant's motion for summary judgment, denying the plaintiff's motion for summary judgment, and entering judgment in favor of the defendant. *Culbert v. Young,* No. 86–C–504–S, mem. op. at 7 (W.D.Wis. Oct. 8, 1986) [hereinafter Mem. op.]; R.17 at 7. In rejecting the plaintiff's due process claims, the district court found that the administrative regulations regarding classification of offenses as either major or minor established purely procedural guidelines without limiting the exercise of discretion by prison officials. Therefore, they did not create a protected liberty interest under *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). Since the plaintiff did not have a protected liberty interest, his fourteenth amendment rights were not violated by the security director's classification. Mem. op. at 5–6. The court also found that the adjustment committee's written statement of reasons for finding the plaintiff guilty of the charges satisfied the due process requirements set forth in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Mem. op. at 6. Following the decision, the plaintiff filed a timely notice of appeal. R.20.

## II

### Analysis

### A. *Security Director's Classification of Offenses as Major*

We address first the plaintiff's argument that the security director's classification of an offense not otherwise listed under § HSS 303.68(2) as a major violation, without stating in the record the basis for this decision, violates due process of law. We agree with the district court that § HSS 303.68 does not provide the plaintiff with a protected liberty interest in having his conduct reports processed as minor vio-

lations. Therefore, we hold that no due process violation has occurred.

The plaintiff concedes that the due process clause of the fourteenth amendment in and of itself does not implicate the interest he seeks to vindicate here. Appellant's Br. at 11 n. 7. "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976). Nevertheless, "a State may create a liberty interest protected by the Due Process Clause through its enactment of certain statutory or regulatory measures." *Hewitt v. Helms,* 459 U.S. 460, 469, 103 S.Ct. 864, 870, 74 L.Ed.2d 675 (1983) (transfer into administrative segregation); *see also Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (transfer to mental institution); *Greenholtz v. Inmates of the Neb. Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (parole). The adoption of mere procedural guidelines, however, does not give rise to a liberty interest protected under the fourteenth amendment. Rather, the state must use "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed and that [the challenged action of prison authorities] will not occur absent specified substantive predicates...." *Hewitt,* 459 U.S. at 471–72, 103 S.Ct. at 871 (citation omitted); *see also Miller v. Henman,* 804 F.2d 421, 424 (7th Cir.1986) (a regulation must establish substantive criteria in order to create constitutional "liberty" or "property").

Neither part of this two-part test enunciated in *Hewitt* is satisfied in this case. The plaintiff argues that § HSS 303.68(3) includes "language of an unmistakably mandatory character," *Hewitt,* 459 U.S. at 471–72, 103 S.Ct. at 871, because it uses the word "should" instead of the word "may." We disagree. The word "should," unlike the words "shall," "will," or "must," is permissive rather than mandatory. The regulation only advises the security director on what criteria to consider but does not require him to consider them.[4] Even if we were to construe the word "should" as being mandatory, the regulation does not create a constitutional liberty interest because it does not impose substantive predicates on the security director's classification decision. In contrast to the language used in the Pennsylvania statute at issue in *Hewitt,* which clearly limited the segregation of prisoners to only certain specified circumstances, the language of § HSS 303.-68 does not ensure that an offense will not be classified as major unless one of the specified criteria is met. It only suggests that these criteria should be considered. As the *Hewitt* Court noted, the mere creation of a careful procedural structure to regulate the exercise of official discretion does not indicate the existence of a protected liberty interest. 459 U.S. at 469–70, 103 S.Ct. at 870–71. *Compare Greenholtz,* 442 U.S. at 11, 99 S.Ct. at 2106 (liberty interest created by a statute providing that the parole board "shall" order the release of a prisoner eligible for parole "unless it is of the opinion that his release should be deferred" because of the existence of any of four specified criteria) *with Mathews v. Fairman,* 779 F.2d 409 (7th Cir.1985) (no liberty interest created by statute providing that an inmate "may" be reassigned within the institution for one of several specified reasons because it does not place any limit on prison officials' discretion to transfer an inmate for any reason). Because "the safe and efficient operation of a prison on a day-to-day basis has traditional-

---

4. Section HSS 303 was amended in 1985. New language was added directing that the security director "shall consider" the five criteria to determine whether to treat an offense as major or minor. Wis.Admin.Code § HSS 303.68(4) (Apr. 1985). The amended regulation also mandates that the security director "shall indicate in the record of disciplinary action the reason for the decision based on these criteria." *Id.* Because the issue before us today concerns only the interpretation of the earlier version of § HSS 303.68, we have no occasion to decide whether the new regulations create a protectible liberty interest.

ly been entrusted to the expertise of prison officials," *Hewitt*, 459 U.S. at 470, 103 S.Ct. at 870, we will not presume that the state intended to place substantive limits on the authority of prison administrators when it has not explicitly said so. Therefore, we hold that § HSS 303.68 establishes a procedural guideline to channel official discretion but does not limit the exercise of that discretion to the listed criteria.[5]

B. *Disciplinary Committee's Finding of Guilt and Imposition of Punishment*

The plaintiff's second argument is that the defendant failed to provide him with an adequate statement of the evidentiary basis for the disciplinary action taken against him in violation of his due process rights under the standard enunciated in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Citing several opinions of this court, the plaintiff contends that the mere recital that an inmate's guilt is based upon a written violation report is inadequate. Rather, he submits that the record must indicate why an officer's report rather than exculpatory evidence was credited, and that summary evidentiary statements such as "based on all available evidence" may not be relied upon. *See Redding v. Fairman*, 717 F.2d 1105, 1114–16 (7th Cir. 1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984); *Chavis v. Rowe*, 643 F.2d 1281, 1286–87 (7th Cir.), *cert. denied*, 454 U.S. 907, 102 S.Ct. 415, 70 L.Ed.2d 225 (1981); *Hayes v. Walker*, 555 F.2d 625, 631–32 (7th Cir.), *cert. denied*, 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977). The defendant does not dispute that the plaintiff was entitled to due pro-

cess at the hearing stage under *Wolff* and under state regulations, see §§ HSS 303.76, 303.82. However, he maintains that the disciplinary committee's statement of reasons for its decision under each of the charges satisfies the requirements of due process. The defendant contends that this court's opinion in *Saenz v. Young*, 811 F.2d 1172 (7th Cir.1987), establishes an interdependence between the particularity of reasons given by the committee and the relative complexity of the charges, the facts, and the inmate's defense. In this case, according to the defendant, the issues were so simple that a lengthy statement of the evidentiary basis for the findings of guilt was unnecessary.

We begin our analysis with the Supreme Court's opinion in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In *Wolff*, the Court held that due process sets limits on prison disciplinary hearings when a state has provided by statute or regulation certain substantive rights regarding that hearing. One of these due process protections is "a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken." *Id.* at 563, 94 S.Ct. at 2978. The considerations underlying this requirement, according to the Court, included protection for a prisoner from collateral consequences of disciplinary action and encouragement of fair administrative decision making:

> Written records of proceedings will ... protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding.

---

5. We are aware that an intermediate Wisconsin court appears to have reached a contrary result. *See State ex rel. Staples v. Department of Health & Social Servs.*, 130 Wis.2d 308, 387 N.W.2d 551 (Wis.1986); *State ex rel. Staples v. Department of Health & Social Servs.*, 128 Wis.2d 531, 384 N.W.2d 363 (1986). However, there the court was primarily concerned with whether the security director's determination was "arbitrary, oppressive or unreasonable" under the applicable state standard of review by certiorari of prison disciplinary committee decisions. Although the court seems to have decided that § HSS 303.68(3) is mandatory in nature, *see State ex rel. Staples*, 384 N.W.2d at 365 n. 1, it did not analyze the regulation for substantive

limits to determine whether a liberty interest was even implicated or otherwise refer to the Supreme Court's decision in *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983).

We also recognize that the federal district courts have considered this issue with varying results. *Compare Robinson v. Young*, No. 86–C–222–C (W.D.Wis. Feb. 24, 1987) (unpublished decision) (liberty interest) *with Jordan v. Young*, No. 85–C–916 (E.D.Wis. June 5, 1986) (unpublished opinion) (no liberty interest). It appears that the *Robinson* court relied primarily on the decision of the Wisconsin Court of Appeals in *State ex rel. Staples*.

Further, as to the disciplinary action itself, the provision for a written record helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly. Without written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others.

*Id.* at 565, 94 S.Ct. at 2979.

This court has also reaffirmed that the written requirement is necessary to determine whether the committee's decision is "based on substantial evidence or whether the decision [is] sufficiently arbitrary so as to be a denial of due process." *Aikens v. Lash,* 514 F.2d 55, 60–61 (7th Cir.1975), *vacated on other grounds,* 425 U.S. 947, 96 S.Ct. 1721, 48 L.Ed.2d 191 (1976). The *Aikens* court found this consideration to be a natural corollary to the Supreme Court's concern in *Wolff* for procedural protections, arguing that the Court could not have contemplated that the procedural rights it was enunciating could "be easily emasculated by allowing prison officials to infringe arbitrarily on an inmate's substantive due process right not to be found guilty except by an appropriate quantum of evidence." *Id.* 514 F.2d at 60. Since this court decided the *Aikens* case, however, the Supreme Court has had the opportunity to consider what quantum of evidence is constitutionally required in prison disciplinary hearing cases. *See Superintendent, Mass. Correctional Inst. v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). In *Hill,* the Court declined to adopt a more stringent evidentiary standard than "a modicum of evidence" as a constitutional requirement. *Id.* at 455–56, 105 S.Ct. at 2774–75. Instead, the Court held that "the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* (emphasis supplied). Furthermore, the Court noted that "[a]scertaining whether this standard is satisfied does not require assessment of the credibility of witnesses, or weighing of the evidence," *id.* at 455, 105 S.Ct. at 2774, and upheld the board's decision based solely upon the testimony of a prison guard and his written report, *id.* at 456–57, 105 S.Ct. at 2775. Thus, the statement of reasons provided by the committee in this case must be assessed not only in light of *Wolff's* procedural concerns but also in light of the substantive standards set forth in *Hill.*

With these principles in mind, we do not think that the cases relied upon by the plaintiff support a finding of a constitutional violation here. In *Chavis,* 643 F.2d at 1287, the court found inadequate the adjustment committee's report which "simply said: 'We recognize and consider the resident[']s statement[,] however[,] we accept the reporting officer[']s charges.'" There was substantial evidence in that case, however, apart from the inmate's own exculpatory statements, that he was not involved in the alleged attack on a prison official. That evidence included an investigatory report and the report of the officer who was the subject of the attack. Both of these reports indicated that the plaintiff was not the guilty party. Thus, the committee's findings and conclusions, which relied only on the incriminating report and excluded the two exonerating reports, did not provide the court with enough information to determine "whether the finding of guilt was based on substantial evidence or whether it was sufficiently arbitrary so as to be a denial of the inmate's due process rights." *Id.* at 1287 (citing *Aikens,* 514 F.2d at 60–61). In other words, given the quantum of evidence weighing in favor of the inmate's innocence, due process required a more detailed statement in the record for finding him guilty.

Similarly, this court held in *Hayes,* 555 F.2d at 633, that the adjustment committee violated due process when, "[r]ather than pointing out the essential facts upon which inferences were based, [it] merely incorporated the violation report and the special investigator's report." The plaintiff in *Hayes* was found guilty of conspiracy to incite a riot and commit mutinous acts. The incident and offense charged were complex and the punishment severe.

Where the charge is complex and the committee fails to explain its findings, the reviewing court will find it difficult and maybe impossible to determine whether the committee on the one hand found facts showing that the prisoner really was guilty of the charge, or on the other hand based the finding of guilt on erroneous legal premises.

*Saenz,* 811 F.2d at 1174; *see also Redding,* 717 F.2d at 1115 (where charge was simple but committee relied on rote phrase such as "based on all available evidence").

■■■ The "line between constitutional adequacy and inadequacy is a fine, but important one." *Redding,* 717 F.2d at 1116. However, in this instance, we think the state has met its constitutional obligations. Applying the teaching of both *Wolff* and *Hill,* we conclude that the kind of statements that will satisfy the constitutional minimum will vary from case to case depending on the severity of the charges and the complexity of the factual circumstances and proof offered by both sides, see *Saenz,* 811 F.2d 1172. The Constitution does not require that the evidence relied upon logically preclude any conclusion but the one reached by the disciplinary board, see *Hill,* 472 U.S. at 457, 105 S.Ct. at 2775. Thus, we believe this case is more like *Saenz* than *Chavis, Hayes* or *Redding.* With respect to each of the disciplinary reports, the question was whether the plaintiff did or did not do the things recited in the conduct report. In each instance, the only evidence contradicting the conduct report was the plaintiff's own statements in his defense. In fact, there was no contrary evidence whatsoever to rebut several of the charges because the plaintiff himself did not even deny the allegations in three of the conduct reports. Although, in each instance, the committee referred to the conduct report as the basis for its guilt determination, nothing more is constitutionally required where the only issue presented at the hearing involved an assessment of the relative credibility of the conduct report and the plaintiff's account of the incident. "Obviously, . . . the committee believed the conduct report and disbelieved the plaintiff. Because there is no mystery about its rea-soning process, despite the extreme brevity of its statement of reasons, that statement is not so deficient as to create error of constitutional magnitude." *Saenz,* 811 F.2d at 1174.

We note, however, that we agree with the *Saenz* court that a prudent committee will be careful to give an adequate statement of reasons in every case, including those that are relatively simple. Here, the committee could easily have written that it disbelieved the plaintiff's statement or that the plaintiff did not deny the allegations. Its failure to do so did not violate the Constitution under the circumstances of this case because, as in *Saenz,* the risk that this plaintiff has been disciplined for things he did not actually do did not materialize. Nor is there any realistic danger that the plaintiff could suffer collateral consequences based on a misunderstanding of the nature of the original proceeding. In short, the concerns expressed in *Wolff,* read in light of *Hill,* are satisfied under the circumstances presented here. In a case where the disciplinary committee's brevity jeopardizes the concerns articulated by the Supreme Court in *Wolff,* we shall, of course, be required to reach the opposite result.

### CONCLUSION

For the foregoing reasons, we hold that the plaintiff has failed to establish a constitutional violation. We therefore affirm the judgment of the district court.

AFFIRMED