Wesley KING, Plaintiff-Appellee (83–1705), Plaintiff-Appellant (83–1774),

v.

H. Gary WELLS and Richard Christiansen, Defendants-Appellants (83–1705), Defendants-Appellees (83–1774).

Nos. 83–1705, 83–1774.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 4, 1984.

Decided April 12, 1985.

Rehearing Denied May 29, 1985. As Amended June 14, 1985.

Rehearing and Rehearing En Banc Denied July 2, 1985.

21. *Id.*

22. *Id.* at 437, 103 S.Ct. at 1941.

Larry Bennett (argued), Bush, Bennett and Magid, Detroit, Mich., for King.

Frank J. Kelley, Atty. Gen. of Michigan, Louis Porter and David Edick (argued), Asst. Attys. Gen., Corr. Div., Crim. Appeals Sec., Lansing, Mich., for Wells and Christiansen.

Before EDWARDS * and MARTIN, Circuit Judges, and BROWN, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

H. Gary Wells and Richard Christiansen appeal from a $1,000 damage award entered against them in favor of Wesley King. The damages were meant to compensate King, a former state inmate, for

* Honorable George Edwards took senior status

emotional distress he suffered as a result of constitutionally defective procedures used by Wells and Christiansen during a prison disciplinary hearing. King cross-appeals the trial court's finding that the damages should not include compensation for time King spent in "top-lock" and loss of good-time credits, both of which resulted from the disciplinary hearing.

In October 1977, officials at the Muskegon Correctional Facility of the Michigan Department of Corrections charged King with "major misconduct." A report issued by officer Prince stated that an inmate named Goldsmith gave Prince a rolled piece of paper and asked him to give it to King. Prince took the package to King who, upon inquiry by Prince, agreed to let Prince open it. Prince opened the package, found a homemade weapon inside, and wrote out a misconduct report.

Christiansen conducted a disciplinary hearing on the charge that King conspired to receive dangerous contraband. King testified at the hearing, and Christiansen reviewed Prince's report and a report prepared by a staff investigator who had compiled witness statements from ten persons. King requested that Christiansen hear testimony from two named witnesses, but that request was denied without explanation. King's theory at the disciplinary hearing was that he was "set up" by persons who wanted him transferred because he had provided officials with information regarding the sexual misconduct of a nurse in the health services unit. King was found guilty of the offense. Christiansen's report stated:

**EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT:**

Says the problem started when he walked up on Nurse Lampley and Thompson having intercourse on the table in the examining room. Says this on January 15, 1985.

happened on Friday night, October 22. Claims that he was set up because of what he knew and saw what was going on between Nurse Lampley and Thompson. Says the only person in Aspen Unit that could get close enough to him to set him up was Goldsmith.

### REASONS FOR FINDINGS:

Based on the written report that King was waiting inside the door of H.S. [Health Services Unit] and Goldsmith gave him the poster to give to King. The staff investigator report states that Goldsmith received the poster to hold on Monday and was delivered back to King on Tuesday.

Recommend Loss of Good Time—Because I am not guilty of anything.

Referred to Security Classification.

King appealed the decision to defendant Wells. Wells denied the appeal:

*Appeal Denied:* You were waiting for the poster when Goldsmith brought it to Health Services. Your notion of a "set up" does not seem likely, under the circumstances.

King then filed a complaint under 42 U.S.C. § 1983 in district court, alleging that Christiansen and Wells had violated his fourteenth amendment right to procedural due process. The district court denied the defendants' motion for summary judgment, *see King v. Wells*, 94 F.R.D. 675 (E.D.Mich. 1982), and a bench trial subsequently was held. In his final order, Judge Cohn held that the procedures employed by the officials were constitutionally defective in three respects. First, the hearing record was inadequate because it did not disclose the reasons for prohibiting the live testimony sought by King.[1] Second, Christiansen had a policy of automatically excluding live witness testimony requested by inmates. Third, the hearing record did not adequately explain the evidence relied upon and the reasons for the decision.[2] The court then awarded King $1,000 for emotional distress due to the inadequate procedures, but King's request for additional damages for loss of good-time credits and time spent in "top-lock" was denied. Judge Cohn denied the additional damages because he concluded that King would have been found guilty of the misconduct even if constitutionally adequate procedures had been used. Both parties appealed.

■ Initially, we note that the prison officials do not dispute that King had a constitutionally protected interest that could not be defeated without due process. The sole dispute is the adequacy of the procedures used, and the Supreme Court has spoken directly on this issue. When a prison disciplinary hearing may result in forfeiture of good-time credits, the prisoner is entitled to a " 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." *Wolff v. McDonnell*, 418 U.S. 539, 564, 94 S.Ct.

---

**1.** After oral argument in this case, the Supreme Court decided *Ponte v. Real,* —— U.S. ——, 105 S.Ct. 2192, —— L.Ed.2d —— (1985). King concedes that this claim is no longer viable in light of the Supreme Court's decision.

**2.** In his order denying the officials' motion for summary judgment, Judge Cohn appeared to endorse the proposition that the hearing report should have "disclosed exculpatory evidence contained within the investigatory report, and explained why the officer's charges were believed rather than the exculpatory evidence in the investigatory report." *King v. Wells,* 94 F.R.D. at 686. Judge Cohn then concluded,

"[F]ailure to give plaintiff access to the investigator's report where the hearing decision effectively incorporated the report with little explanation violated plaintiff's due process rights." *Id.* These comments, which were made in a decision denying the officials' motion for summary judgment when King had not submitted a motion, were inappropriate. Moreover, failure to disclose exculpatory evidence or provide access to the investigatory report was not stated as a ground for relief in Judge Cohn's final opinion and order. Under these circumstances, we express no view on the merits of those propositions.

2963, 2979, 41 L.Ed.2d 935 (1974) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972)). The right to a record of the evidence relied upon may be subject to restriction. "It may be that there will be occasions when personal or institutional safety is so implicated that the statement may properly exclude certain items of evidence, but in that event the statement should indicate the fact of the omission." *Wolff*, 418 U.S. at 565, 94 S.Ct. at 2979. In addition to receiving a record of the findings, an inmate "should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.... Although we do not prescribe it, it would be useful for the Committee to state its reasons for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." *Id.* at 566, 94 S.Ct. at 2980.

■ King established, through evidence presented to the district court, that Christiansen had a policy of not allowing witness testimony under any circumstances. Of course, Christiansen was entitled to rebut this claim by use of whatever evidence he thought appropriate. Christiansen testified that, if he felt that information other than that contained in the staff investigator's report was necessary, he would adjourn the hearing for further staff investigation or call a witness on the telephone. The court found that Christiansen had a policy of automatic exclusion, and that finding is not clearly erroneous.

■ Christiansen's policy of not permitting witness testimony under any circumstances is in clear conflict with *Wolff's* mandate that a prisoner "should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566, 94 S.Ct. at 2980. *Wolff* requires that officials make an individualized decision on the facts of each case, a requirement clearly at odds with a policy of exclusion under all circumstances. *See, e.g., Dalton v. Hutto*, 713 F.2d 75, 78 (4th Cir.1983); *Bartholomew v. Watson*, 665 F.2d 915, 918 (9th Cir.1982); *Hayes v. Walker*, 555 F.2d 625, 629 (7th Cir.), *cert. denied*, 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977). The district court correctly ruled that a policy of excluding all witnesses violates due process.

■ Finally, the prison officials argue that they fulfilled *Wolff's* requirement that the prisoner receive a "written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action." The officials' theory is that King received the required written statement because he received the misconduct ticket and the misconduct report written by Officer Prince. This argument is wholly without merit. *Wolff* requires that a prisoner receive a "written statement *by the factfinders.*" (emphasis added). Christiansen, not Prince, was the factfinder.

■ Christiansen's report plainly does not meet the *Wolff* requirement of a written statement of the evidence relied on and the reasons for the disciplinary action. After stating the general requirements for the adequacy of a hearing report, the *Wolff* Court stated, "It may be that there will be occasions when personal or institutional safety is so implicated that the statement may properly exclude certain items of evidence, but in that event the statement should indicate the fact of the omission." *Wolff*, 418 U.S. at 565, 94 S.Ct. at 2979. This language indicates that *each item of evidence* relied upon by the hearing officer should be included in the report unless safety concerns dictate otherwise. Christiansen's report refers to a "written report that King was waiting inside the door of H.S.," apparently a reference to Prince's

misconduct report. Christiansen's statement also indicates "The staff investigator report states that Goldsmith received the poster to hold on Monday...." The staff investigator's report, however, is nothing more than a compilation of statements of ten different witnesses. A prisoner does not receive a statement of the "evidence relied on" if he receives only a reference to an investigative report that contains statements of ten different witnesses. The hearing report must refer to "each item" of evidence.[3]

■ The district court held that Christiansen's report also should have included a finding as to whose version of the incident was correct, King's or Prince's, as well as a reference to the content of any witness statements marked confidential. We believe that the outcome of the hearing necessarily indicates whose version of the facts was believed, and an express finding on the question is not required. A reference to the *content* of confidential statements is not necessary; *Wolff* requires only that the fact of omission be noted in the record.

■ Having concluded that the officials violated King's due process rights, we now must consider causation and damages. King claims that the procedural violations resulted in his confinement in "top-lock" and the loss of good-time credits. The district court, however, found as a fact that King would have been found guilty of the misconduct even if appropriate procedures had been used.[4] The finding was based on the court's review of all the evidence that had been presented to Christiansen at the

hearing. We cannot conclude that this finding is clearly erroneous. Also supported by the record is the district court's finding that the procedural violations caused King to suffer emotional distress. *See Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). King testified on this issue, and the court awarded him $1,000 compensatory damages. The finding on neither the fact nor amount of damage is clearly erroneous.

■ Next, the officials argue that they are entitled to absolute immunity under *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), and *Ward v. Johnson*, 690 F.2d 1098 (4th Cir. 1982) (en banc). The district court did not address this argument. Nevertheless, it is the law of this Circuit that prison officials who conduct administrative hearings are entitled only to qualified immunity. *See Spruytte v. Walters*, 753 F.2d 498, 510 (6th Cir.1985); *Jihaad v. O'Brien*, 645 F.2d 556, 564 (6th Cir.1981). *See also Saxner v. Benson*, 727 F.2d 669 (7th Cir.1984), *cert. granted sub nom. Cleavinger v. Saxner*, — U.S. —, 105 S.Ct. 1166, 84 L.Ed.2d 318 (1985). An official is not entitled to qualified immunity if his or her conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), or violates "regulations that bear upon the claim of constitutional right," *Spruytte v. Walters*, 753 F.2d at 511. The officials clearly are not entitled to immunity on the facts of this case. *Wolff* was the controlling law at the time of the prison disciplinary hearing, and, as we have noted, the hearing fell woefully short of the *Wolff* requirements.

3. The officials argue that *Walker v. Hughes*, 558 F.2d 1247 (1977), requires a different result. In *Walker* we held that hearing officers could rely on facts that were not formally presented at the hearing. *Id.* at 1260. We did not hold, as Christiansen and Wells suggest, that any facts relied on need not be referred to in the hearing report.

4. The district court correctly noted that the burden of proof shifted to the officials to demonstrate that the procedural violation did not cause King's injury. *See Kendall v. Board of Education of Memphis City*, 627 F.2d 1, 6 n. 6 (6th Cir.1980).

Finally, King challenges the district court's determination of attorneys' fees. Our review is limited to discovering any abuse of discretion. *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The district court reduced the total hours submitted by King for "possible duplication" of services. In *Northcross v. Board of Education,* 611 F.2d 624 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980), we held that "to the extent that hours are rejected, the court must indicate some reason for its action...." *Id.* at 636. An exception to this rule was recognized in certain circumstances: "In complicated cases, involving many lawyers, we have approved the arbitrary but essentially fair approach of simply deducting a small percentage of the total hours to eliminate duplication of services." *Id.* at 636–37. Judge Cohn reduced King's number of compensable hours to account for possible duplication of services even though King employed only one lawyer. Given that the likelihood of duplication of services is much less when a party employs one rather than several attorneys, the reduction for duplication of services was an abuse of discretion. The award of attorneys' fees was appropriate in all other respects.

The judgment of the district court is affirmed in part, reversed in part, and remanded for recomputation of attorneys' fees.

Appellee and cross-appellant King shall recover his costs of this appeal.