815 F.2d 79
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Kevin MURTAUGH, Plaintiff-Appellee,
v.
Harlan EDMONSON, John Rees and Linda Payne, Defendants-Appellants.
 No. 86-5441.
 United States Court of Appeals, Sixth Circuit.
 Feb. 27, 1987.
 
 Before LIVELY, JONES, and GUY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendants, members of a Kentucky state prison disciplinary committee, appeal the district court's grant of summary judgment in favor of inmate Kevin Murtaugh on a finding of a violation of Murtaugh's procedural due process rights in connection with a disciplinary hearing. Because we agree with the decision of the district judge, we affirm.
 
 I.
 
 2
 In July of 1983, Murtaugh, an inmate at the Kentucky State Reformatory, was issued a disciplinary report for allegedly being under the influence of drugs. The report states that a July 10, 1983, urine sample submitted by Murtaugh tested positive for marijuana. During the investigation of the report, petitioner alleged that he was not guilty and had not touched marijuana in eighteen months.
 
 
 3
 A disciplinary hearing was held wherein Murtaugh pleaded not guilty. The lab technician who was to have testified as to the results of the test was not present "due to circumstances beyond the Committee's control" The Adjustment Committee proceeded, based upon the investigating officer's incident report, to find petitioner guilty, and assessed a penalty of loss of privileged housing. Murtaugh appealed this decision to the prison warden who upheld the disciplinary committee's decision.
 
 
 4
 Petitioner then filed the instant claim under 42 U.S.C. Sec. 1983 alleging denial of due process on the ground that the statement which the disciplinary committee furnished to him was inadequate under the standards set forth in Wolff v. McDonnell, 418 U.S. 539 (1974). Upon cross-motion for summary judgment, the court granted petitioner's motion, finding that, although Wolff does not require a witness such as the technician performing the drug test to actually testify, the committee must do more than just accept the word of the investigating officer that a urine sample was taken which showed consumption of drugs.[1] Defendants filed a motion to alter or amend the judgment based on the then-pending Supreme Court case of Cleavinger v. Saxner, 106 S.Ct. 496 (1985), addressing the issue of absolute immunity for prison disciplinary committee members. In the alternative, defendants requested reconsideration on the ground that the committee members were protected by qualified good faith immunity since the exact standards governing the contents of the "written statement" required by Wolff were allegedly unclear at the time Murtaugh's hearing was held and had since been clarified by the Supreme Court in Superintendent, Massachusetts Correctional Institution v. Hill, 105 S. Ct. 2768 (1985). The district judge, after further briefing, found no basis for alteration or amendment of' his original order, which had required defendants to expunge from the record all penalties imposed as a result of his hearing, and awarded nominal damages of $1.00 to petitioner.
 
 II.
 
 5
 On appeal, defendants raise two allegations; namely, that the amount of information contained in the report was sufficient to meet due process requirements, and that the disciplinary committee members were entitled to the shield of qualified good faith immunity since this area of the law was unclear at the time of the hearing.
 
 A. The Procedural Due Process Issue
 
 6
 Wolff v. McDonnell, 418 U.S. 539 (1974), first established an inmate's entitlement to receipt of a written statement containing the evidence relied on and the reasons for the imposition of disciplinary action. The court found this a necessary component of an inmate's due process right in order to
 
 
 7
 protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding. Further, as to the disciplinary action itself, the provision for a written record helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly.
 
 
 8
 Id. at 565.
 
 
 9
 However, the court did not specifically set forth the minimum quantum of evidence which must be contained in such written statement. In applying the minimal standards established in Wolff, other circuits have required sufficient evidence to also "protect[ ] the inmate's substantive due process right not to be found guilty except by an appropriate quantum. of evidence." Chavis v. Rowe, 643 F.2d 1281, 1287 (7th Cir. 1981). Cf. King v. Wells, 760 F.2d 89, 94 (6th Cir. 1985) (a prisoner does not receive a statement of the "evidence relied on" if he receives only a reference to an investigative report ....). In Hill, the Supreme Court addressed this precise question in the context of the revocation of an inmate's good time credits by disciplinary committee action. The Court held that "[t]he Federal Constitution does not require evidence that logically precludes' any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." 105 S. Ct. at 2775. The Court found that "[r]equiring a modicum of evidence to support a decision ... will help to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens." Id. at 2774. The extent of judicial review was clarified as follows:
 
 
 10
 Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.
 
 
 11
 Id.
 
 
 12
 At the outset, we observe that the question of whether procedural due process has been satisfied in a given case does not arise until it has been determined that a protected liberty or property interest is involved. Davidson v. Cannon, 106 S.Ct. 668 (1986); Franklin v. Aycock, 795 F.2d 1253 (6th Ci r . 1986). Since defendants do not contest the existence of such a protected interest, we assume, without deciding, that Murtaugh's right to occupy privileged housing while a prison inmate qualifies for due process protection.
 
 
 13
 The district judge specifically found that there was not even a "modicum of evidence" to support the disciplinary commmitte's findings, and we agree. The relevant portions of the written incident report provided to petitioner are as follows:
 
 ADJUSTMENT COMMITTEE FINDINGS AND ACTIONS:
 
 14
 Resident pleaded Not Guilty. States he has not smoked pot in 19 months. Due to circumstances beyond the adjustment committee control the Lab Tech. could not be on court call as a witness. Committee recommends loss of privileged housing or meritorious living conditions.
 
 REASON FOR FINDINGS AND ANY PUNISHMENT:
 
 15
 Based on the Lab Test of a positive urinalysis test of marijuana.
 
 
 16
 Not only was there no testimony verifying the results of petitioner's test, but no copy of the test results was required nor was a phone call to the laboratory made in attempt to verify this information. We realize that in many cases, where only visual observation of a disciplinary infraction occurs, the testimony and/or written report of that incident may be the only evidence available and therefore, if credible, will support action against an accused inmate. See, e.g., Hill, 105 S. Ct. at 2775, where the Court held sufficient, although "meager," the testimony and written report of a guard who "heard some commotion and, upon investigating discovered an inmate who evidently had just been assaulted. The guard saw three other inmates fleeing together down an enclosed walkway. No other inmates were in the area." However, it is not too much to ask that, when an inmate I § to be deprived of a protected liberty interest based on results of a laboratory test, some verification of that evidence be required. As the Court in Wolff pointed out, "[t]he touchstone of due process is protection of the individual against arbitrary action of government." 418 U.S. at 558 (citation omitted). In circumstances where a simple phone call will suffice to ascertain the existence and result of a report, as well as the identity of the individual tested, due process requires more than acceptance and incorporation of an officer's incident report to guard against both the appearance of arbitrariness in disciplinary actions and the effectual unreviewability of those actions.
 
 B. The Qualified Good Faith Immunity Issue
 
 17
 The Supreme Court in Harrow V. Fitzgerald, 457 U.S. 800 (1982), stated:
 
 
 18
 [G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a a reasonable person would have known.
 
 
 19
 Id. at 818.
 
 
 20
 Disciplinary committee members, functioning within the prison setting, have the defense of qualified good faith immunity available to them. Cleavinger v. Saxner, 106 S.Ct. 496 (1985). According to the Cleavinger Court, "[a]11 the Committee members need to do is to follow the clear and simple constitutional requirements of Wolff; they then should have no reason to fear substantial harassment and liability." Id . at 504.
 
 
 21
 The thrust of defendants' argument on this point is that, until the Court's decision in Hill, the law was not clearly established as to the exact amount of information required to be set forth in a disciplinary written statement, since the Court in Wolff had only required that the factfinders should document enough information to allow a court to review the decision and to protect the inmate from arbitrariness. They contend that the standard set by the Court in Hill is clearly a much lower standard than had previously been required (i.e., that of "substantial evidence"), and that the evidence contained in Murtaugh's written statement without question meets the Court's newly-enunciated "modicum" requirement.
 
 
 22
 This argument is not well taken. First, in denying the defense of absolute immunity to prison officials in Cleavinger, the Court itself indicated that the constitutional requirements set forth in Wolff were "clear and simple." Further, our reading of Hill leads us to conclude that the Court considered itself to be imposing, if anything, a more stringent standard on disciplinary committee written statements. The Court appeared to consider itself to be addressing the issue of the required amount of evidence to be documented under Wolff for the first time. They were careful to point out that requiring "some evidence" would not impose significant additional burdens on disciplinary pro. ceedings, since "the written statement mandated by Wolff requires a disciplinary board to explain the evidence relied upon ...." 105 S. Ct. at 2774. Therefore, any "change" in the law (of which' we discern little) wrought by Hilly militates against defendants' position. Since we find that any clarification of existing law which occurred in Hill did not render the state of the law prior to that time "unclear," we reject defendants' argument that good faith immunity should serve to shield their actions in the case at bar.
 
 
 23
 As the Court aptly noted in Cleavinger, disciplinary committee members are
 
 
 24
 prison officials, albeit no longer of the rank and file, temporarily diverted from their usual duties. They are employees of the Bureau of Prisons and they are the direct subordinates of the warden who reviews their decision. They work with the fellow employee who lodges the charge against the inmate upon whom they sit in judgment. The credibility determination they make often is one between a coworker and an inmate. They thus are under obvious pressure to resolve a disciplinary dispute in favor of the institution and their fellow employee.
 
 
 25
 106 S. Ct. at 502 (citations omitted). With this in mind, we find it appropriate to require some form of verification (be it a phone call, copy of the test results, or testimony) when a deprivation of constitutionally protected rights occurs on the basis of a medical test in order to insure against arbitrary committee action.
 
 
 26
 Based on the foregoing, the decision of the district court is AFFIRMED.
 
 
 
 [1]
 In making this ruling, the district judge reasoned as follows:
 Here it is clear that the defendants relied entirely upon the statement of the investigating officer that plaintiff had given a urine sample that was tested. It made no finding that it had even called the laboratory technician to determine what his laboratory test showed but simply relied upon the statement of the investigating officer.
 We do not suggest that defendant had a duty at an Adjustment Committee hearing to produce proof of chain of custody or proof that the equipment was in proper working order at the time the test was made or that the sample remained in an unchanged condition or that proper operating procedures were followed in conducting the test. We simply would require that the Adjustment Committee satisfied itself at least by a telephone call to the technician as to the facts or circumstances surrounding the tests. We agree that under Wolff, supra, it is not always necessary to have a witness on hand to tetify to the evidence that is the subject of the Adjustment Committee's decision. Certainly, it would seem that something should be done beyond merely accepting the word of the investigating officer that the sample had been taken and showed that plaintiff was guilty of having consumed marijuana.