**Gary HUDSON, Plaintiff-Appellee,**

v.

**Lt. Harlan EDMONSON, Defendant-Appellant.**

**No. 86–5121.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 6, 1986.

Decided May 24, 1988.

---

Barbara W. Jones, Linda G. Cooper (argued), David A. Sexton, Corrections Cabinet, Office of Gen. Counsel, Frankfort, Ky., Leslie Patterson Vose, Landrum, Shouse, & Patterson, Lexington, Ky., for defendant-appellant.

Joseph Elder, II, Robert A. Lee (argued), Louisville, Ky., for plaintiff-appellee.

Before ENGEL, Chief Judge *, JONES and NELSON, Circuit Judges.

ENGEL, Chief Judge.

In this prisoner civil rights action brought under 42 U.S.C. § 1983, defendant Lt. Harlan Edmonson appeals from an order of the United States District Court for the Western District of Kentucky denying his motion for summary judgment. In his original motion and on appeal, Edmonson contends that he is entitled to qualified immunity from personal liability for the acts charged in the complaint.

Assuming for the purpose of this appeal that the acts complained of violated Hudson's constitutional right to due process under the fourteenth amendment, we hold that the status of the law at the time was nevertheless not so clearly established that, on an objective basis, any officer in the position of Lt. Edmonson would have rea-

sonably known that his attempts to afford Hudson with due process were insufficient. Accordingly, we reverse and remand for dismissal of the complaint.

At the core of this litigation is a dispute over the constitutionality of a disciplinary proceedings form. In an effort to comply with the requirements of *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and to provide an efficient and understandable documentary record of prisoner misconduct reports, the Corrections Cabinet had in effect at the time of this dispute a one-page form which set out in logical sequence a written record of each disciplinary proceeding instituted against a prisoner. A copy of the report whose adequacy was challenged in these proceedings against Lt. Edmonson is attached. The document, entitled "Incident Report," commences with the name and identification of the prisoner in question, the date of the complaint, and the precise time of execution. Space for a description of the incident as observed by the complaining officer is then provided, followed by a place for his signature and a place for the signature of the inmate indicating receipt. There follows a report of the investigating officer, the particulars of the time and date of an Adjustment Committee hearing, the Adjustment Committee findings, and a statement of the "reasons for finding and any punishment." Thereafter, there is space for signatures of the Adjustment Committee and an opportunity for the inmate to indicate whether he did or did not wish to appeal.

As can be seen from the attached incident report, the complaint was originally filed by Steven Adwell, Procedures Officer, who stated:

On 9–30–83 at approx. 8:30 pm while in the process of removing Inmate Gary Hudson 89318LC for suspicion of participating in an inmate disturbance, Inmate Hudson became verbally abusive of several staff, myself included. Hudson's abuse continued while he was placed in an institutional van with at least 10 other inmates, who had also been suspected of

* Honorable Albert J. Engel assumed the duties of    Chief Judge effective April 1, 1988.

participating in the disturbance. Hudsons [sic] verbal abuse continued thereby creating a very potential [sic] violent and dangerous situation.

Further down the same page appears a report of the Investigating Supervisor, Lt. Newman: "On 10-3-88 at approx. 4:45 pm that above report was investigated by myself, Lt. Newman. Inmate Hudson has no comment at this time. Investigation delayed due to disturbance and transfer. Statement attached was given to inmate Hudson." The incident report then indicates that the Adjustment Committee met at 4:45 p.m. on October 8, 1988 to review the complaint, and that on October 5, 1988, after Hudson pleaded not guilty, the complaint was "Amended to Cat[egory] III Item I-Interference. 15 Days Seg[regation] WCFTS 5 Days."

Under "reason for findings and any punishment" and immediately following the section on actions by the Adjustment Committee is the following statement: "Based on Officer's report charge was reduced due to content of incident report and statements to the Adjustment Committee. [IMD penalty code No.] 6 WCFTS 5 days." This portion of the incident report was signed by the chairman and the two members of the Adjustment Committee, one of whom is the defendant herein, Lt. Harlan Edmonson. Near the bottom of the report appears Gary Hudson's signature indicating that he did not wish to appeal. Finally, there appears the signature of the superintendent indicating his concurrence with the decision of the Adjustment Committee.

Although Hudson did not appeal from the findings of the Adjustment Committee, he did bring a civil rights action in the United States District Court in which he argued that the Adjustment Committee's written report deprived him of due process of law and violated the provisions of the consent decree by failing to state "the criteria used for enforcing the particular sentence" and "an adequate summary of the evidence upon which the decision and sentence were based." In the complaint Hudson asked the court to grant damages and "such further relief as is just and proper."

In response, defendant Edmonson moved for summary judgment on the ground that he was protected by official immunity and that the Adjustment Committee did not violate Hudson's due process rights as alleged. On March 16, 1984, the district court denied Edmonson's summary judgment motion and found that the Adjustment Committee's report lacked the information that *Wolff* held to be required by due process:

The Committee's sole statement of the reasons for the sentence was "[b]ased on Officer's report[,] charge was reduced due to content of incident report and statements to the Adjustment Committee." The Report does not detail (or even list) what reports were presented to the Committee, who testified before the Committee, or whom the Committee believed and why the Committee credited their testimony. The Committee did not even attach any of the submitted reports or statements to the Incident Report which was filed in this case.

*Hudson v. Edmonson*, No. C 83-1050L(A), slip op. at 3 (W.D.Ky. March 19, 1984). The court ordered the prison to give Hudson a new hearing and to correct the procedural deficiencies of the first hearing, but declined to reach the merits of the qualified immunity issue "due to the action of remanding the case for further proceedings."

The second prison disciplinary hearing again resulted in a finding that Hudson was guilty of "Category III, Item I," with the same sentence imposed. In an affidavit filed with the court, the prison stated that the original disciplinary report would be expunged from Hudson's record. Upon review, the district court ruled that the second hearing complied with due process requirements and dismissed Hudson's complaint.

On September 19, 1984, the court vacated its earlier dismissal order and returned the case to the active docket, solely for the purpose of proceeding on Hudson's claims for damages and attorney fees against Lt. Edmonson. On April 16, 1985, the trial court notified the parties to prepare for trial on the issue of damages. Edmonson

moved to postpone the trial pending the Supreme Court's decision in a case which could resolve whether prison hearing officers are entitled to an absolute or qualified immunity. In a separate motion, he renewed his qualified immunity claim for the first time since the case had been restored to the active docket. On August 30, 1985, the district court ordered trial to be stayed pending receipt of the Supreme Court's decision, but denied Edmonson's qualified immunity claim without assigning any reason therefor. Edmonson then moved for reconsideration of the denial of his qualified immunity claim, arguing that since he was entitled to qualified immunity, it was immaterial whether he might be entitled to the even greater protection of absolute immunity. The issue was partially resolved by the awaited Supreme Court decision, *Cleavinger v. Saxner*, 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985), in which the Court determined that prison disciplinary hearing officers were entitled only to a qualified and not an absolute immunity, notwithstanding the fact that in at least some aspects their functions did appear to have a judicial quality to them. The trial judge shortly thereafter denied Edmonson's motion for reconsideration, holding that it was "without merit" in view of *Cleavinger*. Edmonson then appealed, relying upon his right to do so before trial as set forth in *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). *See also Kennedy v. City of Cleveland*, 797 F.2d 297 (6th Cir.1986). While we were initially uncertain as to the timeliness of Edmonson's appeal, we are now satisfied that this appeal, coming only after the denial of the motion for reconsideration, was timely and brings before us all issues relevant to the propriety of the order denying his earlier motion for summary judgment on the basis of qualified immunity.

On appeal, the claim of qualified immunity is essentially nothing more than a question of whether Hudson should be entitled to damages from Edmonson personally for the latter's alleged due process violations in connection with the first incident report. As noted previously, upon the trial judge's determination that the original proceedings did not comply with the requirements set forth in *Wolff*, the cause was remanded and a new incident report and hearing were provided Hudson which the trial judge found to be in full compliance with *Wolff*. We need not therefore concern ourselves with Hudson's present right to due process or any injunctive relief to which he might have been entitled, since that matter has already been resolved satisfactorily.

In determining if Hudson is entitled to damages we must examine not only whether, based upon the record as it existed at the time of the proceedings on the first incident report, the action of Lt. Edmonson was violative of Hudson's due process rights under *Wolff*, but also whether a reasonable officer in the position of Lt. Edmonson should have known that such conduct was violative of the prisoner's clearly established constitutional rights. Whatever might be said about the legal sufficiency of the incident report and related proceedings on October 5, 1983, we are persuaded that, employing the objective standard required by *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), an officer in the position of Lt. Edmonson would not reasonably have known that the report and hearing were so insufficient as to constitute a clear violation of Hudson's due process rights. Thus, it is not necessary to determine whether a more complete explanation from the Committee might have been desirable or, as the trial judge found, was constitutionally mandated.

We note at the outset that the only challenge made and the only basis for holding or seeking to hold Lt. Edmonson personally responsible in damages was his failure, as a member of the Adjustment Committee, to spell out more specifically the findings and reasons for the action taken by that Committee. The general requirements for such proceedings were set forth by the Supreme Court in *Wolff*:

> We hold that written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense.

At least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the Adjustment Committee.

We also hold that there must be a "written statement by the factfinders as to the evidence relied on and reasons" for the disciplinary action. *Morrissey* [*v. Brewer*], 408 U.S. [471] at 489 [92 S.Ct. 2593 at 2604, 33 L.Ed.2d 484].

*Wolff,* 418 U.S. at 564–65, 94 S.Ct. at 2978. The Court also discussed the need for a written record:

Written records of proceedings will thus protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding. Further, as to the disciplinary action itself, the provision for a written record helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly. Without written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others.

*Id.* at 565, 94 S.Ct. at 2979.

To determine whether Edmonson should have known that the first incident report might violate the *Wolff* requirements, it is necessary to consider first what procedural safeguards were employed by the Committee. Hudson, the Adjustment Committee, and all others involved did have before them the rather detailed description of the incident set down by Officer Adwell at the top of the incident report and this was followed, on the same page, by the Adjustment Committee's findings. Likewise, the report of the Investigating Supervisor was readily available, and this report was allegedly provided to Inmate Hudson. Finally, the Committee's report showed that it considered the specific allegations made by Officer Adwell. The language "based on officer's report" plainly points to a determination by the committee that it believed the facts as reported by Officer Adwell, but that it concluded that while they were in-sufficient to indicate a violation of inciting to riot they were sufficient to support a finding of "interference only." Based on these facts, we believe that it was not unreasonable, at least at that time, for the Committee to expect that their findings could be understood and intelligently challenged by the inmate if he so wished. This is particularly true since the factual allegations preceding their findings appeared on the same page of the report. We further believe that it was not unreasonable for this same Committee implicitly to conclude that the incident report and proceedings comported with Hudson's due process rights under *Wolff.* An inmate reading the report could easily discern what he was charged with, what the Adjustment Committee found concerning those charges, and what it decided to do about them. Compelling further evidence of due process is the fact that, for Hudson, due process worked. He received at the first hearing a reduction in the severity of the punishment from that originally sought.

In addition, based on the state of the law as it existed in 1983, we do not believe it can fairly be said that Lt. Edmonson's signing of that first incident report amounted to a clear violation of the more specific requirements of *Wolff,* even though it might later be found so by the trial court after the fact. Other decisions involving similar issues support our finding that from Edmonson's perspective the incident report and proceedings were sufficient. For example, in *Brown v. Frey,* 807 F.2d 1407 (8th Cir.1986), an opinion issued more than three years after Hudson's initial delinquency proceedings, the Eighth Circuit found sufficient compliance in an incident report with an even more cryptic record: "(1) Relied on CV & additional report; (2) No CV's for past nine months; (3) Relied on #5 definition." *Id.* at 1410. If such proceedings were found to be compliant by a panel of the Eighth Circuit in 1986, it is difficult for us now to hold that a reasonable officer in the position of Lt. Edmonson could not have entertained the same belief three years earlier. We note also that our circuit has addressed this same issue in the context of Michigan corrections in *King v.*

*Wells,* 760 F.2d 89 (6th Cir.1985). In that case qualified immunity was found not to protect prison officials under circumstances which involved a number of complaints regarding the prison's disciplinary procedures. The holding in *King* appears less appropriate for resolution of the present case, however, since one of the major issues there involved the defendant's policy of not permitting live witness testimony under any circumstances, conduct which is clearly violative of *Wolff,* at least in the absence of a determination that concern for safety necessitates such a policy. *See Wolff,* 418 U.S. at 565, 94 S.Ct. at 2979. In addition, *King* was not issued until April 12, 1985, or approximately one and one-half years after the incident involved here, and thus the decision would not have been available to guide Edmonson.

Similarly, a review of the guidance available to Lt. Edmonson within his own jurisdiction, the Western District of Kentucky, reveals no case law that would have indicated to a reasonable officer that the initial incident report filed against Hudson might have been in violation of *Wolff.* Two of the three cases decided prior to the proceedings at issue here set forth general requirements for an incident report which were met in the present case. *Canterino v. Wilson,* 546 F.Supp. 174, 215 (W.D.Ky. 1982) (Due process requires that the prisoner "be given a hearing and provided with written notice of the charges 24 hours in advance of the hearings .... [and] a written statement of the evidence relied upon and the reasons for penalty if disciplinary action is imposed."); *Tate v. Kassulke,* 409 F.Supp. 651, 656 (W.D.Ky.1976) (An inmate's due process safeguards under *Wolff* include "the right to notice of the charge against him, the right to an impartial factfinder which does not include any person who witnessed the alleged infraction, the right to present his version of the case, and the right to be represented by a lay assistant, probably another inmate."). While a third case does provide more definitive guidance and might have alerted Lt. Edmonson that the Adjustment Committee's written findings were potentially inadequate, *Ivey v. Wilson,* 577 F.Supp. 169,

172–73 (W.D.Ky.1983), this case was not filed until September 16, 1983, only nineteen days before the Adjustment Committee released its written findings. Under such circumstances, we do not believe that a reasonable officer in Lt. Edmonson's position would have been appraised of the holding in a federal district court case filed less than three weeks before.

Also of interest in a legal analysis of Edmonson's actions is *Superintendent, Mass. Correctional Institution v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). *Hill* was decided on June 17, 1985, more than a year after the incident here and only a few days after *King* was decided. The original panel in *King* denied rehearing three days after *Hill* issued and without reference to it. We find the circumstances in *Hill* at least somewhat instructive in Edmonson's case, although it is entirely true that *Hill* involved not the sufficiency of the written record but the narrower question of how much evidence there must be to support a disciplinary committee's action:

> [T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board.... This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...."

*Id.* at 455, 105 S.Ct. at 2774 (quoting *United States ex rel. Vajtauer v. Commissioner of Immigration,* 273 U.S. 103, 106, 47 S.Ct. 302, 304, 71 L.Ed. 560 (1927)). In May 1982, Hill and Crawford, inmates in a Massachusetts state prison, received disciplinary reports charging them with the assault of another inmate. Separate hearings were held for both inmates at which the prison disciplinary board heard testimony from a guard, Sergeant Maguire, and received his disciplinary reports. According to the records from both hearings, Maguire heard an inmate say loudly, "What's going on?" and, upon opening the doorway immediately thereafter, found an inmate named Stephens bleeding from the mouth and suffering from a swollen eye, obviously assaulted. There also appeared to have

been a struggle as evidenced by the dirt strewn about the sidewalk. Still within view Maguire saw three inmates, including Hill and Crawford, jogging away down the walkway. There were no others in the area. Maguire concluded that one or more of these inmates had assaulted Stephens, most probably acting as a group. The three were charged with the assault, and despite their denial of involvement, were subsequently found guilty of violating prison regulations and penalized by a revocation of good time.

After citing *Wolff*'s requirement of "provision for a written record" where fundamental human rights may have been abridged, the Court went on to hold that "revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record." *Hill*, 472 U.S. at 454, 105 S.Ct. at 2773 (citations omitted). In explaining its decision the Supreme Court went on to hold that requiring a modicum of evidence to support a decision would help prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens.

> Because the written statement mandated by *Wolff* requires a disciplinary board to explain the evidence relied upon, recognizing that due process requires some evidentiary basis for a decision to revoke good time credits will not impose significant new burdens on proceedings within the prison. Nor does it imply that a disciplinary board's factual findings or decisions with respect to appropriate punishment are subject to second-guessing upon review.

*Id.* at 455, 105 S.Ct. at 2774.

The Court then concluded that the proceedings of the disciplinary board and the evidence before it were sufficient to support the finding of a violation of prison rules, a finding which required neither the amount of evidence necessary to support a criminal conviction under *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), nor "any other standard greater than some evidence" ordinarily applicable

in such a context. Therefore, the Court held that "[a]lthough the evidence [of the inmates' actual involvement] might be characterized as meager, ... the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Hill*, 472 U.S. at 457, 105 S.Ct. at 2775.

The sufficiency of the evidence presented in this case has never been challenged by Hudson except insofar as he claimed that his misconduct did not amount to inciting to riot. He prevailed on this point in his first hearing, however, thus demonstrating that he not only had the opportunity to persuade the committee to reduce the charge against him but in fact succeeded. Applied here, *Hill* at the very least demonstrates that the evidence was sufficient in Hudson's case to support a finding of violation of certain disciplinary rules, particularly when a more informal level of scrutiny based upon the "some evidence" standard is employed. In other words, if the "some evidence" standard of *Hill* is sufficient to support the Committee's finding here that the inmate is guilty, it is difficult to show how the written finding under *Wolff* can be more demanding than the minimal evidentiary findings upheld in *Hill*.

Again we pass no judgment upon the determination of whether the ultimate standards employed by the prison and found sufficient in the second hearing were constitutionally required or met minimum constitutional standards. Those issues are not before us and Lt. Edmonson did not participate in any way in those latter proceedings. We only hold that at the time of the very limited action taken by Lt. Edmonson, a reasonable officer in his position would not have known that the challenged incident report might have violated Hudson's right to a written statement as then required by *Wolff*.

Accordingly, the judgment of the district court is REVERSED and the cause REMANDED with instructions to DISMISS the complaint as to Lt. Edmonson on the basis that he was entitled to a qualified immunity from liability.

## ATTACHMENT A

JC-058-08-068

**CORRECTIONS CABINET**
Incident Report

Name __Gary Hudson__     Number __89318LC__     Date __9-30-83__

Work Assignment_____ Date __9-30-83__ Time __8:30 pm__ Housing Unit ➤

The following incident was observed by me (include place) On 9-30-83 at approx. 8:30 pm while in the process of removing Inmate Gary Hudson 89318LC for suspicion of participating in an inmate disturbance, Inmate Hudson became verbally abusive of several staff, myself included. Hudson's abuse continued while he was placed in an institutional van with at least 10 other inmates, who had also been suspected of participating in the disturbance. Hudsons verbal abuse continued thereby creating a very potential voolent and dangerous situation

Charge __VI.1 - Inciting or riot and/or rioting__

Reporting Employee's Signature __Steven Adwell (original signed__ Title __Procedures Officer__

I received a copy of this report:Resident's Signature_____ Date_____

### INVESTIGATION

Report of Investigating Supervisor __On 10-3-83 at approx. 4:45 pm that above report was investigated by myself, Lt. Newman. Inmat Hudson has no comment at this time. Investigation delayed tmx due to disturbance and transfer. Statement attached was given to inmate Hudson.__

Date & Time of Adjustment Committee Hearing __10-4-83__    __9:00 am__    __KSR__

Legal Represenative __Yes__     List of Witnesses: __Officer Fryberger —__

Does Resident Waive 24 hour notice __Yes__ XXX No __Capt. Tomlinson, Roy Eversole, B. Smith__

Date __10-3-83__ Time __4:45 pm__ Investigating Officer _____ Title ____

ADJUSTMENT COMMITTEE FINDINGS AND ACTIONS: Date __10/5/83__    Time __3:30 PM__

Resident pleaded Not Guilty. Amended to Cat III Item 1 - Interference
15 Days Seg. WCFTS 5 Days.

Reason for Findings and any Punishment_____
Based on Officer's report charge was reduced due to content of incident report and statements to the Adjustment Committee.

IMD Penalty Code Number __6__ WCFTS 5 Days

| | |
|---|---|
| _____ Suspend for_____ | Restriction of privileges for_____ |
| _____ Refer to Psychiatrist | Days through_____ date |
| _____ Refer to Psychologist | _____ Forfeiture of Good Time_____ days |
| _____ Refer to Caseworker | _____ Extra Duty |
| _____ Charge not Substantiated | _____ Assign to Adm.Seregation for_____ days |
| __x__ Assign to Segregation for __15__ days | |

Other_____

Sentence Stayed Pending Appeal/    Yes/  / No : Reason_____

Chairman,Adjustment Committee    Member of Committee    Member of Committee

Circle One
I do  (I do not)  wish to appeal    Resident's Signature __Gary Hudson__ Date_____ Time_____

Reasons Therein: (You have 5 working days to send in other reasons for appeal)_____

Superintendents Appeal : (circle one)

Concurs with Adjustment Committee    Reduce Punishment    Void Incident

Reason:_____

THIS FORM IS TO BE PREPARED IN QUADRUPLICATE
Completed forms to Record Clerks
White Copy to Institutional Central File
Yellow Copy to Resident
Gold Copy to Associate Superintendent (C)
Pink Copy to Central Office Central File
Photocopy all Disciplinary Reports on Parole
Grants to Parole Board via Superintendent

Superintendent's Review

Deputy Commissioner's Review

NATHANIEL R. JONES, Circuit Judge, dissenting.

Because I believe that the state of the law in October 1983 was such that a responsible official in Lt. Edmonson's position should have known that the incident report provided to Hudson was violative of Hudson's due process rights, I respectfully dissent.

### A.

My resolution of the qualified immunity issue first requires me to briefly address the merits of Hudson's due process claim. In my view, the district court correctly concluded that the Adjustment Committee's report issued to Hudson was insufficient as a matter of law to satisfy the due process standards enunciated in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). As the majority recognizes, one of the things *Wolff* requires is that prison officials disciplining a prisoner for serious misconduct must provide the prisoner with a " 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." *Id.* at 564, 94 S.Ct. at 2979 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972)). While it is true that the Court in *Wolff* did not explicitly indicate how detailed this "written statement" had to be, the Court did indicate that the statement should be adequate to (1) allow subsequent administrative or judicial review; (2) protect the inmate from adverse collateral consequences based upon misunderstanding of the original proceedings; and (3) ensure that prison officials would act fairly. *Id.* at 565, 94 S.Ct. at 2979.

The written statement issued to Hudson in this case was, in my view, clearly inadequate to fulfill any one of these announced purposes. Indeed, to suggest, as the majority does, that it is sufficient under *Wolff* for an Adjustment Committee to simply point to the charging officer's report and assert that the discipline is based upon that report, deprives *Wolff*'s "written statement" requirement of any substance whatsoever. Even in its narrowest reading, *Wolff* clearly and unmistakably requires that a prisoner be given some explanation of the "reasons" for the Adjustment Committee's action. No explanation was given to Hudson; merely rote recitations. As Judge Allen correctly observed:

> The Report does not detail (or even list) what reports were presented to the Committee, who testified before the Committee, or whom the Committee believed and why the Committee credited their testimony. The Committee did not even attach any of the submitted reports or statements to the Incident Report which was filed in this case.

J.App. at 72.

Accordingly, I would affirm the district court's decision that Hudson's due process rights were violated in the circumstances of this case.

### B.

Of course, as the majority correctly notes, even if Hudson's due process rights were violated, Lt. Edmonson cannot be held personally liable in damages unless the state of the law in October 1983 was such that a responsible officer in a similar position should have reasonably known that the written report issued to Hudson was insufficient to satisfy due process. Stated another way, in order for Lt. Edmonson to be liable, it must have been "clearly established" prior to 1983 that a prisoner facing discipline for a major misconduct offense had a due process right to receive from the Adjustment Committee a written statement spelling out more clearly than was done here the Committee's findings and the reasons for the disciplinary action. Because I believe it was "clearly established" in 1983 that a prisoner had such a right, I would hold that Edmonson, as chairman of the Adjustment Committee, is not entitled to qualified immunity in this case.

In order for a constitutional right to be "clearly established," the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right." *Anderson v. Creighton*, —— U.S. ——, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

This does not mean that the "very action in question" must have previously been held unlawful; a defendant "cannot hide behind a claim that the particular factual predicate in question has never appeared *in haec verba* in a reported opinion." *Little v. Walker,* 552 F.2d 193, 197 (7th Cir.1977). Rather, the right will be considered clearly established, and qualified immunity will be unavailable, upon the lesser showing that the unlawfulness of the official action was apparent in light of pre-existing law. *Anderson,* 107 S.Ct. at 3039. Thus, while an official " 'has, of course, no duty to anticipate unforeseeable constitutional developments,' ... [i]f the application of settled principles to [a particular] factual tableau would inexorably lead to a conclusion of unconstitutionality, a prison official may not take solace in ostrichism." *Little,* 552 F.2d at 197 (quoting *O'Connor v. Donaldson,* 422 U.S. 563, 577, 95 S.Ct. 2486, 2494, 45 L.Ed.2d 396 (1975)).

In my view, the holding in *Wolff* was by itself sufficiently clear to put a responsible official on notice that the written statement issued to Hudson would be insufficient as a matter of law to satisfy Hudson's due process rights. Although, as I indicated earlier, the *Wolff* court did not explicitly articulate how detailed the written statement was required to be, the "contours" of the right were sufficiently clear that a reasonable official should have known that the cryptic statement Hudson received would not measure up. *Wolff* clearly requires that the written statement given to a prisoner must include the *evidence relied upon and the reasons for the disciplinary action.* The written statement given to Hudson merely stated that a charge of "inciting [a] riot and or rioting" was reduced to a charge of "interference" due to the "content of [the] incident report and statements to the Adjustment Committee." (*See* Attachment "A," *supra* ). This statement reveals neither the reasons for the disciplinary action taken nor the evidence relied upon by the disciplinary committee. Hudson was not told why he was taken before a disciplinary committee in the first place, nor was he told what information the incident report contained or what statements were made to the committee and by whom. Unless *Wolff*'s "written statement" requirement is deprived of any substantive significance, which I believe is one result of the majority opinion, I simply cannot understand how it can be seriously maintained that it was reasonable for the Adjustment Committee to conclude, "implicitly" or otherwise, that the incident report and proceedings comported with Hudson's due process rights.

That *Wolff* itself was sufficient to put responsible officials on notice that a statement like that provided to Hudson would not comport with due process is further suggested by decisions from lower federal courts interpreting and applying *Wolff.* For example, in *Ivey v. Wilson,* 577 F.Supp. 169 (W.D.Ky.1983), decided prior to the events at issue in this case, the court held that an adjustment committee's report was insufficient under *Wolff.* The court stated:

> [T]he Committee was required to set out a short statement as to what were the facts, whose evidence was credible, etc. This statement may, indeed, be brief, and need not reach the length or complexity of a judicial "Findings of Fact and Conclusions of Law." However, the one sentence statement of the Adjustment Committee in this case is unacceptable.

*Id.* at 172–73.

The *Ivey* court based its decision entirely on *Wolff*'s holding that a prisoner facing discipline is entitled to a written statement by the factfinders as to the evidence relied upon and the reasons for the disciplinary action. There is absolutely no indication that the *Ivey* court found the *Wolff* decision to be unclear or that the court believed that *Wolff* was not itself a sufficient basis for the result reached. Moreover, the court cited with approval a 1981 decision in which the Seventh Circuit held, also solely on the basis of the language in *Wolff,* that an adjustment committee report did not satisfy due process. *Chavis v. Rowe,* 643 F.2d 1281, 1286–87 (7th Cir.), *cert. denied sub nom. Boles v. Chavis,* 454 U.S. 907, 102 S.Ct. 415, 70 L.Ed.2d 225 (1981). Thus, while it may be true that courts prior to 1983 had not yet decided a case presenting

the exact "factual tableau" as is presented here, it is clear that lower courts viewed *Wolff*'s written statement requirement as having substantive significance and were applying the *Wolff* decision, so viewed, in such a way that a responsible official would not have believed that a statement like that provided to Hudson would comport with due process.

The majority suggests that because *Ivey* was decided only three weeks prior to the events at issue in this case, the *Ivey* holding could not serve to appraise a reasonable official that the incident report was constitutionally deficient. The majority cites no support for this novel, and unmanageable, proposition, and I suggest that there is none. In any event, as I discussed above, since the holding in *Wolff* was itself sufficiently clear to outline the "contours" of the due process right to a written statement—a fact implicitly recognized in *Ivey* itself—it simply does not matter when *Ivey*, or any other case for that matter, was decided.

Finally, I do not think there is any merit to the majority's suggestion that satisfaction of the "some evidence" standard of *Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) necessarily implies that *Wolff*'s written requirement has also been satisfied. As the majority points out, *Hill* and *Wolff* are concerned with entirely different issues. *Hill* involves the quantity of evidence necessary to support a disciplinary committee's finding. *Wolff*, by contrast, focuses on the sufficiency of the written record developed by the disciplinary committee. Simply because the evidence in a particular case is "sufficient" to support a finding against a prisoner, it does not necessarily follow that the prisoner has received the kind of written statement to which he is entitled under *Wolff* as a matter of due process. Indeed, in my view, one of the primary reasons the Court in *Hill* was willing to allow a modicum of evidence to sustain a disciplinary decision was that, due to *Wolff*'s written statement requirement, significant protections against arbitrary action were already in place. Accordingly, I would hold that

where the evidence is determined to be sufficient under *Hill* to support a finding of guilt or where, as here, the sufficiency of the evidence is not challenged, a court must nevertheless make an independent inquiry as to whether the written statement provided to the prisoner was sufficient under *Wolff* to comport with due process.

For all of the foregoing reasons, I would hold that Lt. Edmonson is not entitled to qualified immunity in this case. The lower court's decision should be affirmed and the case remanded for a determination of damages.